**Albert R. GARCIA, Plaintiff,**

**v.**

**Brenda BURNS, et al., Defendants.**

**No. CV–N–89–350–HDM.**

United States District Court,
D. Nevada.

Feb. 18, 1992.

Albert R. Garcia, in pro per.

Anne B. Cathcart, Office of Atty. Gen., Carson City, Nev., for defendants.

_____

MEMORANDUM DECISION
AND ORDER

McKIBBEN, District Judge.

Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights when he was held in segregated housing for more than two weeks after being classified to general population immediately after his transfer to the Northern Nevada Correctional Center (NNCC). This court previously granted summary judgment for the Defendants on all of the claims stated in the complaint, e.g., various challenges to the conditions of confinement, except the claim that Plaintiff was confined without being afforded due process of law. See order at docket # 17. Plaintiff's attempt to appeal said ruling was dismissed as premature. See order at docket # 28.

The day before a telephonic pretrial conference, Defendants filed a renewed motion for summary judgment (# 42), arguing that a recent decision of the Ninth Circuit Court of Appeals (*Grayson v. Rison,* No. 89–56188 (9th Cir. Sept. 11, 1991) is dispositive of the remaining issue. Plaintiff was directed to file an opposition to the renewed motion. See minutes of hearing at docket # 44. Plaintiff has responded (# 45), in which he attempts to distinguish the present action from *Grayson.* The court shall therefore re-evaluate whether Defendants are entitled to summary judgment on the confinement issue.

MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56. The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), and *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 883 (9th Cir. 1982). Once the movant presents evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the factual context makes the respondent's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *California Arch. Bldg. Prod. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *See Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1305–06 (9th Cir.1982).

When faced with a motion for summary judgment, the material before the court "must be viewed in the light most favorable to the [non-moving] party," *Adickes v. S.H. Kress and Co.,* 398 U.S. at 157, 90 S.Ct. at 1608, and it must appear to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proven under the allegations of the complaint. *Halet v. Wend Investment Co.,* 672 F.2d 1305 (9th Cir.1982). Furthermore, allegations of a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). Finally, summary judgment is not a disfavored pro-

cedural shortcut, but an integral part of the federal rules as a whole. *Celotex Corp. v. Catrett, supra.*

FACTS

■ On April 21, 1989, Plaintiff was transferred from the maximum security prison to a minimum security prison, NNCC. Upon arrival he was confined to Unit 5, O–Wing, which was a cell designated for new arrivals to NNCC. On the day of his arrival, he was classified to general population housing, however there was not a general population cell available at that time. Therefore, Plaintiff remained in the cell for new arrivals until May 9, 1989, when he was moved to an available cell in general population. The Administrative Regulation (AR) in effect at the time of Plaintiff's transfer stated that new arrivals would be temporarily separated from the general population until an appropriate housing assignment was determined by a classification committee. "Pending this classification hearing, the inmate will remain on temporary lockup (red tag) status until the committee determines that it is appropriate to release the inmate to an assigned bed and program." See AR # 506(V)(C)(6), Exhibit A, docket # 42.

In the prior order partially denying summary judgment, the court expressed concern over Defendants interchangeably referring to the cell in which Plaintiff was housed as an "intake cell", "temporary lockup status," and "red tag," because the latter two terms connote an emergency situation.[1] See p. 5, lines 7–9, docket # 17. The record before the court at that time did not show whether Plaintiff was held in segregation, and if so, what type of segregation (administrative or punitive) because of the concomitant conditions of confinement. The court now finds that, although Plaintiff had been classified to general population, he was instead held in a form of administrative segregation.

Generally, administrative segregation refers to special non-punitive housing wherein the inmate is segregated from the general population for various reasons. The seminal case dealing with administrative segregation recognized that inmates may need to be placed in a special type of housing for a multitude of reasons.

> The phrase "administrative segregation," as used by the state authorities here, appears to be something of a catchall: it may be used to protect the prisoner's safety, to protect other inmates from a particular prisoner, to break up potentially disruptive groups of inmates, or simply to await later *classification or transfer.*

*Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983) (emphasis added). Because of the myriad reasons for the use of administrative segregation, the Court found that "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Helms,* 459 U.S. at 468, 103 S.Ct. at 870. Consequently, the use of or placement into administrative segregation does not amount to a due process violation. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haynes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976).

Although the regulations for the Nevada Department of Prisons do not define administrative segregation to specifically include new transferees, it may be so interpreted. Administrative Regulation # 507(IV) defines administrative segregation as follows:

> A form of separation from the general population administered by the classifica-

---

**1.** The court's concern with the use of "red tag" to describe Plaintiff's situation was caused by Administrative Directive # 53–89. Although not written until several months after Plaintiff's situation, the directive states that its purpose is to "clarify the use of red tag status." The directive restricts the use of "red tag" status to situations where an *emergency* exists which requires "immediate control of the situation ... to prevent serious injury to staff or inmates, or to prevent an incident from escalating." (emphasis on emergency original).

tion committee when the continued presence of the inmate in the general population would pose a serious threat to life, property, self, staff or other inmates, or to the security or orderly running of the institution. Inmates pending investigation can also be included.

Undeniably, a transferee to an institution raises security concerns until an appropriate housing assignment is determined.

Plaintiff claims that he was held in segregation without being provided the amount of process that was due. He relies on the fact that during the two weeks he was held in this particular cell, and after he was classified to general population, he was still required to spend 23 hours per day in the cell, including all meal times. Plaintiff has not presented any evidence to show that his confinement was intended to be punitive. Moreover, it appears that Defendants had legitimate non-punitive reasons for Plaintiff's extended confinement in the designated cell, e.g., he was a new transferee and there bed was not available in general population. Therefore, despite the restrictive conditions, Plaintiff was simply legitimately held-over in administrative segregation awaiting appropriate space in general population.

Moreover, Plaintiff was not due any more process than that which was afforded him. He received a classification hearing shortly after his arrival. This was not a situation wherein he was moved from general population into administrative segregation pending an investigation into whether he had violated the code of penal discipline. Much of Plaintiff's position is premised on having been moved from one type of housing to a more restrictive confinement. A greater amount of process may be due when an inmate's classification is changed to a more restrictive confinement. See Helms, 459 U.S. at 471–72, 103 S.Ct. at 871–72. But when an inmate simply remains in the same classification assignment in the same institution, then a greater amount of process is not due.

Therefore, Defendants are correct that the new Ninth Circuit decision in Grayson v. Rison, 945 F.2d 1064 (9th Cir.1991), is controlling in this case; Plaintiff has fail to adequately distinguish Grayson in any meaningful way.

In Grayson, an inmate was classified to administrative segregation as a new transferee. The institution had several administrative segregation housing areas, some more restrictive than others. He contended that he was entitled to a greater amount of due process when he was moved from the least restrictive to the most restrictive housing within administrative segregation. The court rejected the argument.

When prison officials have legitimate administrative authority, such as the discretion to move inmates from prison to prison or from cell to cell, the Due Process Clause imposes few restrictions on the use of that authority, regardless of any additional motives which are claimed to exist. It doesn't matter what label is placed on the action or what other reasons may be behind it; nor is it relevant that the conditions of confinement may become less pleasant as a result. We must allow prison officials the freedom to exercise their administrative authority without judicial oversight. Some administrative actions will inevitable make prisoners feel cheated; nevertheless, this does not give them a federal cause of action.

Grayson, 945 F.2d at 1067. Although Plaintiff's classification was changed to general population, it could not become effective until there was space available. Although Plaintiff may be displeased in not being immediately moved into general population, the timing of the move is the type of administrative action which should enjoy freedom from judicial oversight and not rise to the level of a federal cause of action.

IT IS THEREFORE ORDERED that Defendants' renewed motion for summary judgment (# 42) is GRANTED. The Clerk of the Court shall enter judgment accordingly.