896 F.Supp. 990 (1995)
Brian P. HAGAN, Plaintiff,
v.
Maria C. TIRADO, Lieutenant, United States Penitentiary, Lompoc, California, Defendant.
No. CV 94-4583-ABC(RMC).
United States District Court, C.D. California.
August 17, 1995.
*991 Brian P. Hagan, Lompoc, CA, pro se.
Julie Zatz, Assistant United States Attorney, Los Angeles, CA, for defendants.

ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
COLLINS, District Judge.
Pursuant to 28 U.S.C. Section 636(b)(1)(C), the Court has reviewed the Complaint and other papers along with the attached Report and Recommendation of the United States Magistrate Judge, and has made a de novo determination of the Report and Recommendation.
IT IS ORDERED that the Report and Recommendation be adopted in its entirety.
IT IS FURTHER ORDERED that a Judgment be issued dismissing with prejudice the Complaint and action.
IT IS FURTHER ORDERED that the Clerk shall serve forthwith a copy of this Order and the Judgment of this date on the parties.

REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE
CHAPMAN, United States Magistrate Judge.
This report and recommendation is submitted to the Honorable Audrey B. Collins, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

BACKGROUND
Plaintiff, a federal prisoner incarcerated at the United States Penitentiary (U.S.P.), Lompoc, California, proceeding pro se and in forma pauperis, filed a Bivens[1] action against Lieutenant Maria C. Tirado, a federal employee at U.S.P. Pursuant to 28 U.S.C. § 1331, plaintiff seeks monetary damages for *992 violation of his constitutional rights under the Fifth and Eighth Amendments to the United States Constitution.
Plaintiff alleges that on April 8, 1994, defendant involuntarily placed him in administrative detention as a "protective case" by forging his signature to an administrative detention request, falsely reflecting that he had voluntarily sought protective custody. Plaintiff further contends that defendant, by falsely placing him in administrative detention as a voluntary detainee, deprived him of his due process right under the Fifth Amendment to a hearing within seven days of administrative detention, as required by 28 Code of Federal Regulations (C.F.R.) § 541.23(b).[2] Plaintiff also alleges that being placed in administrative detention labeled him a "protective custody" case, thereby placing him "in imminent danger" and causing him mental distress in violation of the Eighth Amendment.
On October 3, 1994, defendant filed a Motion to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), or, in the alternative, a Motion for Summary Judgment, pursuant to Fed.R.Civ.P. 56. Exhibits and declarations were attached to defendant's motion. On October 6, 1994, the Court gave plaintiff notice that he should become familiar with Rule 56 and advised him that, to resist summary judgment under Rule 56, he must respond by submitting affidavits or other documentary evidence setting forth specific facts showing there is a genuine issue for trial. Plaintiff requested an extension of time to respond to defendant's motion, which was granted. On October 26, 1994, plaintiff filed an objection to defendant's motion and attached thereto several exhibits, including three declarations. Defendant's reply was filed on November 7, 1994.
The facts of the case are, as follows: On April 8, 1994, defendant placed plaintiff in administrative detention as a "protective case" after she learned his life was in danger because he owed money to unidentified inmates who supplied him with drugs. Later that day, plaintiff was provided with a copy of the administrative detention order. No formal hearing was held within seven days of plaintiff's placement in administrative detention. Plaintiff remained in administrative detention for several months, despite efforts by prison authorities to return him to the general population. During the time he was in administrative detention, plaintiff refused to attend review hearings held on May 6, June 10, July 8, September 10, and October 10, 1994.
Plaintiff does not dispute that he was in danger in the general population or that defendant did not have cause to place him in protective custody. He disputes that he voluntarily sought protective custody, and asserts he was involuntarily placed in protective custody. The Court has assumed plaintiff's version of the facts to be true; but as discussed below, that is not a material issue of fact.

DISCUSSION
The Court has determined to treat the motion to dismiss as a motion for summary judgment. Rule 12(b)(6) provides that a motion to dismiss "for failure of the pleading to state a claim upon which relief can be granted ... shall be treated as [a motion] for summary judgment and disposed of as provided in Rule 56" if matters outside the pleadings are presented to the court and "all parties [are] given reasonable opportunity to present all material made pertinent to such a motion...." Plaintiff was given that opportunity, and he did present pertinent material.
Fed.R.Civ.P. 56(c) authorizes the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict. Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict...." If reasonable minds could differ, judgment should not be entered in favor of the moving party. Anderson v. Liberty Lobby, Inc., 477 *993 U.S. 242, 250-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).
The moving party bears the initial burden of identifying the elements of the claim in the pleadings, or other evidence, which the moving party "believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir.1982). An issue of material fact is one that affects the outcome of the litigation and requires a trial to resolve. See S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir.1982). The burden then shifts to the non-moving party to establish, beyond the pleadings, that there is a genuine issue for trial. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553. More than a "metaphysical doubt" is required to establish a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986). The parties bear the same substantive burden of proof as would apply at a trial on the merits. Liberty Lobby, 477 U.S. at 252, 106 S.Ct. at 2512.
The landmark Bivens decision established that a federal cause of action exists for a citizen to recover damages resulting from federal agents' violation of the Fourth Amendment. This cause of action, generally known as a Bivens action, has been extended to allow a claim for a citizen to recover damages from federal agents' violation of the due process clause of the Fifth Amendment. Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979).
Liberty interests protected by the due process clause of the Fifth Amendment may originate in the Constitution or in federal laws and binding regulations. In order to determine whether a constitutional violation has occurred, a determination must initially be made that a protected liberty interest exists and secondarily as to what process is due. Federal prison authorities have an obligation to protect inmates in federal institutions from harm (18 U.S.C. § 4042) and to ensure they "live in a safe and orderly environment" (Section 541.10(a)). Toward that end, prison authorities may discipline inmates who violate prison rules and may take inmates into protective custody who are in danger.
The federal regulations establish two separate, but parallel, schemes for removing inmates from the general prison population and placing them into special or segregated housing units. Inmates who violate prison rules, and are disciplined, are placed in disciplinary segregation, or special housing units, on a temporary basis, not exceeding five days, or on a long term basis following a hearing before the disciplinary hearing officer (DHO). Section 541.20. The hearing procedures before DHO are governed by Section 541.17, which provides wide-ranging protections for the inmates.[3] Section 541.23(a) sets forth several categories of inmates who may be considered "protective cases" for administrative detention. These categories include, among others, victims of assault, informants, former law enforcement and correctional officers, inmates subject to sexual and other pressures, and an "inmate [who] is in serious danger of bodily harm."[4] An inmate may request protective custody or be placed in protective custody by prison authorities against his will. Section 541.22(a). Inmates voluntarily and involuntarily placed in protective custody are housed together in the same segregated housing units, in administrative detention.
The Warden is authorized to appoint a segregation review officer (SRO) "to conduct reviews of inmates placed in administrative segregation [protective custody] ... in accordance with the requirements of § 541.20 and *994 § 541.22." Section 541.16(d). It is SRO's duty to "review the status of inmates housed in administrative detention." Section 541.22(c). The Warden may delegate authority to place an inmate in administrative detention to lieutenants at the institution. Section 541.22(a). An inmate voluntarily placed in administrative detention is entitled to have SRO conduct a "record review within three work days of the inmate's placement in administrative detention and ... a hearing and formal review [of his] status [if the] inmate ... spends seven continuous days in administrative detention." Id. An inmate involuntarily placed in administrative detention is entitled to have the Warden or designee "review the inmate's status within two work days of placement to determine if continued protective custody is necessary" (Section 541.22(c)(3)) and entitled to a hearing, which complies with most of the procedural requirements of Section 541.17, "no later than seven days from the time of [his] admission" to administrative detention (Section 541.23(b)).
All inmates in protective custody, regardless of how they got there, are entitled to have prison "[s]taff ... conduct a psychiatric or psychological assessment, including a personal interview, when administrative detention continues beyond 30 days," and a similar assessment at monthly intervals thereafter, and for SRO to "hold a hearing and review these cases formally at least every 30 days," at which time the inmate has the right to appear before SRO unless he waives that right. Section 541.22(c). Inmates may be held in protective custody for a period normally not to exceed ninety days; but the period may be extended beyond ninety days when the staff provides clear documentation in the record for such an extension. Section 541.23(c). "Where appropriate, staff shall first attempt to place the inmate in the general population...." Section 541.23(d). Where placement in the general population is not appropriate, the staff may order the inmate transferred. Id.
The main difference between review of an inmate's voluntary placement and an inmate's involuntary placement in protective custody is that for the inmate placed involuntarily in protective custody, SRO must conduct a formal hearing, complying with the procedural requirements of Section 541.17, within seven days of administrative detention. See Section 541.23(b). Plaintiff asserts that he has a constitutional right under the due process clause of the Fifth Amendment, allegedly arising from Section 541.23(b), for a formal hearing within seven days of his placement in administrative detention, and defendant's failure to provide that hearing gives rise to a Bivens cause of action for damages.
The due process clause does not protect every change in the conditions of confinement having a substantial adverse impact on an inmate. Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). Prisoners' "liberty interests ... protected by the Due Process Clause ... will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, ___ U.S. ___, ___, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). The failure of prison officials to comply with a federal regulation requiring a disciplinary hearing within eight days of alleged misconduct, resulting in disciplinary segregation, "[does] not alone constitute a denial of due process." Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir.1989).
The Supreme Court in Sandin held that a Hawaii prisoner had no procedural due process right to present witnesses at a disciplinary hearing for misconduct, which resulted in his disciplinary segregation from other prisoners.[5] "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law. [¶] ... We hold that [the inmate's] discipline in segregated confinement did not present the type *995 of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, ___ U.S. at ___, 115 S.Ct. at 2301.
The Sandin decision reverses the trend started in Hewitt v. Helms, 459 U.S. 460, 474, 103 S.Ct. 864, 872, 74 L.Ed.2d 675 (1983), upon which plaintiff relies. The Supreme Court was particularly unhappy with the progeny of Hewitt, which "shift[ed] the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, ... encourag[ing] prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." Sandin, ___ U.S. at ___, 115 S.Ct. at 2299.
If an inmate placed in disciplinary segregation has no due process right to a hearing with certain procedural safeguards, a fortiori an inmate placed in administrative segregation has no such due process right. Prescient of the Sandin decision, the Ninth Circuit rejected a federal inmate's argument that he was entitled to a hearing under prison regulations and the due process clause when he was moved from less restrictive to the most restrictive housing within administrative segregation. Grayson v. Rison, 945 F.2d 1064, 1067 (9th Cir.1991). "When prison officials have legitimate administrative authority, such as the discretion to move inmates from prison to prison or from cell to cell, the Due Process Clause imposes few restrictions on the use of that authority, regardless of any additional motives that are claimed to exist.... We must allow prison officials the freedom to exercise their administrative authority without judicial oversight. Some administrative actions will inevitably make prisoners feel cheated; nevertheless, this does not give them a federal cause of action." Id. See Smith v. Noonan, 992 F.2d 987, 988 (9th Cir.1993); Garcia v. Burns, 787 F.Supp. 948 (D.Nev.1992).
Grounds for confining an inmate to administrative, as opposed to disciplinary, segregation do not involve decisions or judgments that would be "materially assisted by a detailed adversary proceeding." Hewitt, 459 U.S. at 474, 103 S.Ct. at 872. "It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.... [A]dministrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." Id. at 468, 103 S.Ct. at 870. "Unlike disciplinary confinement, the stigma of wrongdoing or misconduct does not attach to administrative segregation.... [T]here is no indication that administrative segregation will have any significant effect on parole opportunities." Id. at 473, 103 S.Ct. at 872.
In considering a case similar to this one, the District Court for the Eastern District of Virginia granted a motion to dismiss, noting that federal regulations "do not create a firmly established right [of an inmate] to be returned to the general population after a hearing at which some specific findings are made.... The language of 28 C.F.R., sections 541.22 and 541.23 merely directs a procedure that staff are to follow within certain time frames when a prisoner does not wish to be confined in administrative detention. They do not create a liberty interest in release from detention which a hearing would protect. [¶] Even though a prisoner involuntarily held in administrative detention may be entitled under 28 C.F.R. § 541.23 to a hearing on the subject of his continued detention, whether or not the inmate stays in administrative detention remains discretionary with the institutional staff. That determination depends not on anything within the prisoner's control, but on the perceived danger to his well-being if he was housed in the general population, as well as the potential threat to security and good order if he was released." Awalt v. Whalen, 809 F.Supp. 414, 416 (E.D.Va.1992) (citations omitted). Assuming defendant did not comply with Section 541.23(b), plaintiff cannot show any harm resulted from that deviation.
Having determined that there is no liberty interest in plaintiff having a full-blown, formal hearing within seven days of placement as a "protective case" in administrative segregation, the factual disagreement between plaintiff and defendant as to whether plaintiff *996 was a voluntary or involuntary "protective case" is immaterial. Thus, there is no issue of material fact in dispute between the parties and the case is appropriate for the granting of summary judgment. Accordingly, it is unnecessary to determine whether defendant had qualified immunity at the time plaintiff was placed in protective custody.
Lastly, plaintiff claims that administrative segregation as a "protective case" violated his Eighth Amendment right against cruel and unusual punishment. "Under the Eighth Amendment, the pertinent inquiry is (1) whether placement of ... inmates in [segregated] cells constitutes an infliction of pain or a deprivation of the basic human needs ..., and (2) if so, whether prison officials acted with the requisite culpable intent such that the infliction of pain is `unnecessary and wanton.'" Anderson v. County of Kern, 45 F.3d 1310, 1312-13 (9th Cir.1994) (quoting Farmer v. Brennan, ___ U.S. ___, ___, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994)). "In prison condition cases, prison officials act with a requisite culpable intent when they act with deliberate indifference to the inmates' suffering.... [¶] The test for whether a prison official acts with deliberate indifference is a subjective one: the official must `know[] of and disregard[] an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. at 1313 (quoting Farmer, ___ U.S. at ___, 114 S.Ct. at 1979).
Placing an inmate without his consent[6] in administrative segregation as a "protective case" does not violate the Eighth Amendment. "First, as ... held in Toussaint [v. McCarthy, 801 F.2d 1080, 1091-92 (9th Cir.1986)], administrative segregation ... is within the terms of confinement ordinarily contemplated by a sentence. [¶] Second, prison officials have a legitimate penological interest in administrative segregation, and they must be given `wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" Anderson, 45 F.3d at 1316. Rather than constituting "deliberate indifference" to plaintiff, placement of plaintiff in administrative segregation for his own protection shows the Warden's desire to safeguard plaintiff.[7] Furthermore, plaintiff, by his declarations, fails to show that his placement in administrative segregation actually prejudiced him in any way. Thus, plaintiff has not stated a claim under the Eighth Amendment.

RECOMMENDATION
IT IS RECOMMENDED that the Court issue an Order (1) approving and adopting the Report and Recommendation; and (2) directing that judgment be entered dismissing the action.
NOTES
[1] Bivens v. Six Unknown Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
[2] All pertinent regulations are in Title 28 of Code of Federal Regulations.
[3] These protections include written notice of the charges, representation at the hearing, the right to make a statement and present documentary evidence, the right to have witnesses called to testify, including witnesses from outside the institution, the right to be present throughout the hearing unless excluded by DHO, who must document his reasons for exclusion, and the issuance of a report by DHO after the hearing. See Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).
[4] Section 541.23(a)(8).
[5] This holding has been applied retroactively to pending cases. Mujahid v. Meyer, 59 F.3d 931, 932 n. 2 (9th Cir.1995).
[6] Sections 541.22(a) and 541.23(a) provide for the involuntary placement of a prisoner in administrative segregation. Plaintiff does not assert that involuntary placement in administrative detention violates the Eighth Amendment.
[7] The Court is not oblivious to the possibility that administrative segregation may be abused or may be a pretext for punishment; but, plaintiff has not alleged that. Cf. Vallina v. Meese, 704 F.Supp. 769, 773 (E.D.Mich.1989); Perez v. Neubert, 611 F.Supp. 830 (D.C.N.J.1985).