**Shawn DELANEY, Plaintiff,**

v.

**Donald SELSKY, Director of Special Housing and Inmate Discipline for the New York State Department of Correctional Services; Dominic Mantello, Superintendent of Coxsackie Correctional Facility; and Thomas A. Coughlin, Commissioner, Defendants.**

No. 92–CV–320.

United States District Court, N.D. New York.

Oct. 2, 1995.

Shawn Delaney, Sonyea, New York, pro se.

Robert Abrams, Attorney General of the State of New York, Albany, New York (Helena M. Heath, Assistant Attorney General, of counsel), for Defendants.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

The Court returns to this matter upon defendants' motion for reconsideration in light of *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). In its earlier order, the Court, *inter alia,* denied defendants' motion for summary judgment on behalf of Defendants Selsky and Mantello as to Mr. Delaney's Fourteenth Amendment due process claim for lack of adequate notice and opportunity to be heard. The Court also deferred judgment on Defendants Selsky and Mantello's qualified immunity claim.

I signed that order on June 17, 1995. Two days later, the Supreme Court handed down *Sandin.* On the basis of that case, defendants now move for reconsideration of this Court's decision to deny their motion for summary judgment on behalf of Defendants

Selsky and Mantello as to Mr. Delaney's due process claim. Also on the strength of *Sandin*, defendants take up the qualified immunity issue again and ask this Court to rule that Defendants Selsky and Mantello are entitled to its protection.

## I. BACKGROUND

### A. Standard for Reconsideration

A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice. *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). Defendants' motion for reconsideration relies on the first prong of this test, an intervening change in the law. Because the due process issues this case raises were on their way to trial when the Supreme Court decided *Sandin*, and because *Sandin* profoundly altered the standards for determining when prisoners suffer a deprivation of constitutionally-protected liberty interests, defendants' motion for reconsideration is hereby granted.

### B. Facts

On October 15, 1990, the New York Department of Correctional Services ("DOCS") sanctioned Mr. Delaney in a Tier III hearing before Hearing Officer Koch. The sanction was 365 days in the Special Housing Unit ("SHU"). D's Ex. B. At the time of the hearing, Mr. Delaney was already in keeplock and had 197 days left to serve there. Hearing Officer Koch decided that Mr. Delaney's keeplock and SHU time should run concurrently. At the conclusion of a subsequent administrative review of the disciplinary hearing, Defendants Selsky and Mantello amended the penalty by ordering that Mr. Delaney serve the keeplock and SHU sentences consecutively. Defendant Mantello informed Mr. Delaney of this change on October 16, 1990, one day after the disciplinary hearing.

### C. Plaintiff's Due Process Claim

Defendants' stipulated facts contain evidence that Defendants Selsky and Mantello reviewed and modified Mr. Delaney's sanction to his detriment without granting him prior notice or a hearing. *See* Defendants' Rule 10(j) Statement. Applying pre-*Sandin* case law, this Court concluded in its earlier order that Mr. Delaney had presented a genuine issue of material fact as to whether Defendants Selsky and Mantello extended his sentence to SHU in violation of his procedural due process rights. The Court must now consider whether the changes in due process law that *Sandin* effected require a different ruling on defendants' motion for summary judgment.

### D. Summary Judgment Standard

Under Fed.R.Civ.Pro. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand*, 807 F.2d 44 (3d Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *modified*, 821 F.2d 121 (2d Cir.), *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987).

## II. DISCUSSION

### A. *Sandin* and its Aftermath

Reversing a judicial trend towards expanding prisoners' constitutionally-protected liberty interests, the Supreme Court stated in *Sandin* that although States may create liberty interests protected by the Due Process Clause,

these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300 (citations omitted). The Court thus instructed federal courts to focus their liberty interest inquiries on the nature of alleged deprivations, rather than on negative inferences from the "shalls" that dot prison regulations designed mainly to guide the conduct of corrections officers. *Id.* at ——, 115 S.Ct. at 2299. More specifically, the Court held that where disciplinary segregation is substantially similar to the conditions imposed upon inmates in administrative segregation and protective custody, disciplinary segregation does not present "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at ——, 115 S.Ct. at 2301.

█ In the months that have passed since *Sandin,* a few courts in this circuit, including this one, have had opportunities to consider its impact on the due process rights of prisoners confined to administrative or disciplinary segregation. This court held in *Eastman v. Walker,* 895 F.Supp. 31 (N.D.N.Y. 1995), that where a prison regulation states that a prisoner's keeplock status "shall" be changed within seventy-two hours, the "decision to keep an inmate in keeplock for ninety-six hours instead ... to ensure institutional security and safety is not 'atypical' and does not impose a 'significant hardship'," violative of an inmate's liberty interest. *Id.* at 33, 34.

The Western District reached a similar conclusion in *Carter v. Carriero,* 1995 WL 522806 (W.D.N.Y.1995). The court first noted that New York prison regulations allow inmates to be placed in SHU for disciplinary confinement, detention, administrative segregation, protective custody, keeplock confinement, and "for any other reason, with the approval of the deputy commissioner for facility operations." *Id.* at *4 (citing 7 N.Y.C.R.R. § 301.1–.7). It went on to hold that given the similarities between SHU disciplinary segregation and administrative confinement in New York prisons, a penalty of 270 days in SHU disciplinary segregation does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Therefore, the plaintiff's deprivation did not implicate a constitutionally-protected liberty interest that entitled him to the procedural protection he claimed he was due. *Id.* at *4–6.

The Southern District reach a similar conclusion in *Uzzell v. Scully,* 1995 WL 412546 (S.D.N.Y.1995). Uzzell claimed that his due process rights were violated when a corrections officer placed him in keeplock, an administrative segregation unit where he remained for twenty-three days, without the twenty-four hours' notice of charges against him that the Supreme Court set forth in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), as a requirement of procedural due process. *Id.* at *1. Applying *Sandin,* the Court held that because prisoners do not have a protected liberty interest in remaining free from keeplock, the State can confine prisoners there without giving them twenty-four hours' prior notice of the charges against them. *Id.* at *1–2.

**B. *Sandin's* Effect on Mr. Delaney's Due Process Claim**

Mr. Delaney claims that Defendants Selsky and Mantello violated his due process rights by extending his term of disciplinary confinement without granting him prior notice or a hearing. In effect, Mr. Delaney argues that once he had been sentenced to 365 days of SHU confinement, to run concurrently with the 197 days remaining on his keeplock confinement, he acquired a liberty interest in remaining free from an "extra" 197 days in SHU. On this argument, when Defendants Selsky and Mantello altered the SHU sentence so that it would begin to run at the conclusion of Mr. Delaney's keeplock sentence, they "added" 197 days to his SHU confinement without affording him the procedural protections to which he was entitled.

Relying upon *Sandin,* Defendants Selsky and Mantello now argue that Mr. Delaney's

confinement to disciplinary segregation in SHU, whether for 168, 197, or 365 days, does not implicate a constitutionally-protected liberty interest. The factual basis for this assertion is the substantial similarity between the conditions of confinement in SHU and in administrative segregation. *See, e.g., Carter, supra.* at *4–6.

### 1. Duration of Confinement

 Defendants ignore the fact that even where the conditions of disciplinary confinement "mirror[ ] those conditions imposed upon inmates in administrative segregation and protective custody," *Sandin,* — U.S. at —, 115 S.Ct. at 2301, an inappropriate *duration* of disciplinary confinement still raises due process concerns. In *Sandin,* the Court specifically noted that the confinement at issue there "did not exceed similar but totally discretionary confinement *in either duration* or degree of restriction." (emphasis added). *Id.* Expanding on this temporal theme, the Court stated that relative to the "significant amounts of 'lockdown time' even for inmates in the general population ... the State's actions in placing [the inmate in disciplinary segregation] for 30 days did not work a major disruption in his environment." *Id.*

Mr. Delaney's original sentence was, in effect, for 168 days in disciplinary segregation after he completed the 197 days remaining on his keeplock sentence. He received this sentence after an administrative hearing whose procedural adequacy is not questioned here. In *Carter,* the court held that 270 days' confinement in SHU does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." This Court is not prepared to say that as a matter of law, 365 days' SHU

confinement is a sufficiently typical and insignificant hardship on Mr. Delaney, relative to the ordinary incidents of life in the Coxsackie Correctional Facility, to permit the State to deprive him of procedural protections before imposing that sanction. *Sandin* does not compel a different conclusion.

However, when Defendants Selsky and Mantello altered Mr. Delaney's sentence the day after his administrative hearing, they extended his disciplinary segregation by only 197 days. This period of time is significantly shorter than the 270 days' disciplinary segregation that the *Carter* court permitted prison officials to impose without providing prior notice or a hearing. One basis for the *Carter* court's decision was its finding, based on New York prison regulations, that the inmate's disciplinary confinement "did not exceed similar administrative confinement 'in either duration or degree of restriction.' " *Carter,* 1995 WL 522806 at *4.

### 2. Conditions of Confinement

Therefore, if Mr. Delaney complained only about the additional duration of his SHU confinement, this Court would likely grant summary judgment in favor of defendants. However, Mr. Delaney asserts in his reply to defendants' motion for summary judgment that the extra 197 days he spent in disciplinary confinement at the Coxsackie Correctional Facility were different in degree, if not duration, from similar administrative confinement.[1] He claims that because of his unusual height—almost seven feet—his confinement to SHU for one year caused "back problems." Apparently, the bed in his SHU cell was too small for him and as an SHU resident, he received only one hour of recre-

---

1. Mr. Delaney also made this allegation earlier, in the context of his cruel and unusual punishment claim. The Court is aware that it granted defendants' motion for summary judgment on Mr. Delaney's 8th Amendment cause of action. The Court is also aware that it denied defendants' motion for summary judgment on Mr. Delaney's due process claim on the grounds that a material question of fact existed as to whether Defendants Selsky and Mantello extended Mr. Delany's SHU confinement in violation of state policies or laws.

The *Sandin* case, however, renders both the duration and the conditions of disciplinary confinement relevant to the issue of whether the

nature of a prisoner's disciplinary sanction raises due process concerns. In their motion for reconsideration, defendants contend that the conditions of SHU confinement "are nearly identical to what an inmate experiences when placed in administrative segregation." In his reply, Mr. Delaney responds that for him, the conditions in SHU were substantially different. In light of *Sandin*'s reforms, Mr. Delaney's earlier allegations about the conditions of his confinement, the fact that defendants addressed this issue in their motion for reconsideration, and the general rule that courts are to construe *pro se* complaints liberally, the Court perceives no prejudice to the defendants by revisiting this issue here.

ation per day. Mr. Delaney claims that for most of his time in SHU, he was "forced to stand or lay in an uncomfortable and compromising position."

█ Accepting as true, for the purposes of the present motion only, Mr. Delaney's claims about the conditions of his SHU confinement, this Court cannot declare as a matter of law that they worked a sufficiently typical and insignificant hardship on him, relative to the ordinary incidents of life in the Coxsackie Correctional Facility, to permit the State to deprive him of procedural protections before extending his disciplinary sanction by 197 days. Therefore, the Court reiterates its denial of the defendant's motion for summary judgment with respect to Mr. Delaney's due process claim against Defendants Selsky and Mantello. Despite *Sandin*'s reforms, which render it permissible for prison officials to extend *an* inmate's SHU confinement by 197 days without prior notice and a hearing, a material question of fact remains as to whether, because of Mr. Delaney's height and the conditions of his cell, extending *his* SHU confinement by 197 days imposed upon him an atypical and significant hardship.

### C. Qualified Immunity

Defendants argue, again on the basis of *Sandin*, that Defendants Selsky and Mantello are entitled to qualified immunity. It is odd that defendants seek to establish qualified immunity on the basis of *Sandin* when the conduct about which Mr. Delaney complains occurred four years before the Supreme Court decided that case. The fact that the law changed in 1995 does not indicate that the law was unclear in 1991; Mr. Delaney may well have had clearly-established due process rights in 1991 that he would not have, under the same circumstances, in 1995. Defendants are reminded of the long-standing rule that when determining whether state officials are entitled to qualified immunity, the court must consider the law as it existed at the time the conduct in question occurred. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). For this reason and for the reasons stated in its earlier order, the Court continues to defer judgment on the qualified immunity issue.

Defendants' motion for summary judgment on plaintiff's due process claim is DENIED.

Defendants' motion for summary judgment on the issue of qualified immunity is DENIED.

**IT IS SO ORDERED.**