Rene TELLIER, Plaintiff,

v.

Willie SCOTT (Former Warden); Susan Gerlinski (Associate Warden); Mr. Tramel (Captain); Jesse James (Current Warden); Mr. Parish (Title Unknown); and John Gibson (Assistant Captain), Defendants.

No. 94 Civ. 3459 (KMW).

United States District Court,
S.D. New York.

Jan. 26, 1998.

USP Lewisburg, Lewisburg, PA, pro se.

Jonathan Willens, Assistant U.S. Attorney, Mary Jo White, U.S. Attorney, New York City, for defendants.

### OPINION AND ORDER

KIMBA M. WOOD; District Judge.

Plaintiff *pro se*, a federal inmate, brought this *Bivens* action based on defendants' alleged deviations from the federal regulation governing administrative detention, 28 C.F.R. § 541.22 (1997). *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Defendants moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. On August 22, 1996, Magistrate Judge Bernikow issued a Report and Recommendation (the "Report") in this action. Because the parties rely on matters outside the pleadings, Magistrate Judge Bernikow treated the motion as one for summary judgment, as provided by Fed.R.Civ.P. 12(b)(6).

In the Report, Magistrate Judge Bernikow recommended that I grant defendants' motion for summary judgment with respect to claims against Sharon Fields ("Fields"), and deny their motion with respect to Willie Scott, Susan Gerlinski, Mr. Tramel, Jesse James, Mr. Parish, and John Gibson. In a September 4, 1996 letter, plaintiff stated that he had no objections to the Report and requested leave to amend his complaint.

In an order dated October 29, 1996, I adopted the portion of the Report that recommended that I grant defendants' motion for summary judgment with respect to Fields and directed the Clerk of Court to enter judgment in favor of Fields. I also granted plaintiff's motion for leave to amend his complaint and found that defendants, previous motion to dismiss the original complaint or for summary judgment was moot.

In a letter dated November 4, 1996, plaintiff requested leave to withdraw his proposed amended complaint and reinstate the original Report. Given that the parties had yet to proceed on the basis of the amended complaint, I found, in an order dated November 15, 1996, that justice was served by granting plaintiff's motion and reinstating defendant's motion for summary judgment or to dismiss the complaint and Magistrate Judge Bernikow's Report. Defendants then submitted objections to the Report on December 4, 1996. Because the Report makes a recommendation with respect to a dispositive motion, I review *de novo* those aspects of the Report to which there are objections pursuant to 28 U.S.C. § 636(b). For the reasons stated below, I adopt Magistrate Judge Bernikow's recommendation that I deny defendants' motion for summary judgment.

### I. The Report

The facts are set forth in the Report and the Court assumes familiarity with that opinion. The parties do not dispute that plaintiff Tellier was placed in administrative detention upon transfer to the Metropolitan Correctional Center ("MCC") and that he remained housed in the Special Housing Unit ("SHU") for the entire 522 day period of his stay at the MCC. However, plaintiff alleges deviations from federal regulations governing administrative detention, 28 C.F.R. § 541.22, over the course of this period, and maintains that these deviations constitute violations of his Fifth Amendment right to due process. Defendants insist plaintiff received all of the notifications, hearings, and reviews required under § 541.22, and further contend that the alleged failure to comply with this regulation does not violate any constitutional right supporting a *Bivens* claim. Moreover, they argue, even if plaintiff's complaint had stated a constitutional claim, defendants have qualified immunity from suit because of the unsettled state of the law from the time of plaintiff's detention at the MCC to the present. Finally, they maintain that three defendants—Wardens Scott and James, and Of-

ficer Fields—did not personally participate in the alleged constitutional violation.

The central issue to be resolved in this motion is whether defendants have established that no genuine issue of material fact exists regarding plaintiff's treatment while at MCC and defendants' involvement in the alleged due process violation. After a careful consideration of the parties' legal arguments, as well as relevant law, Magistrate Judge Bernikow applied the standard for summary judgment in a *Bivens* action, and ruled that defendants were not entitled to a judgment as a matter of law.[1]

In making this determination, Magistrate Judge Bernikow first assessed whether the Supreme Court's recent decision in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), renders invalid all constitutional claims based upon violations of federal regulations governing administrative segregation. Magistrate Judge Bernikow found no such general bar and further ruled that 522 days of administrative segregation did give rise to a liberty interest under *Sandin*.[2] Although noting that prisoners are entitled to fewer procedural protections when confined to SHU for administrative as opposed to disciplinary purposes, Magistrate Judge Bernikow concluded that it was not yet clear that plaintiff had been accorded all requisite protections in the instant case. Specifically, Magistrate Judge Bernikow stated that material facts remain in dispute concerning the frequency and adequacy of hearings and reviews accorded plaintiff, the conditions of plaintiff's confinement while in the SHU, and the extent of all but one

defendant's personal participation in the alleged constitutional violation.[3] In view of these contested material facts, Magistrate Judge Bernikow also rejected defendants' qualified immunity defense at this stage of the proceedings.

Defendants make four main objections to the Report, all of which I find unavailing. First, they state that Magistrate Judge Bernikow improperly relies on cases involving liberty interests arising under state rather than federal law. Second, they maintain that Sandin mandates the dismissal of this action. Third, they contend that summary judgment should have been granted in any event because plaintiff was accorded all the process he was due. Fourth, they consider the Report's rejection of their qualified immunity defense erroneous because plaintiff fails to allege the violation of a clearly established constitutional right. In the discussion that follows, I will address these objections in turn.

## II. Analysis

First, defendants maintain that Magistrate Judge Bernikow improperly relied on cases in which state-created liberty interests in avoiding administrative detention were recognized, "but failed to note that this claim arises in a federal prison governed by *federal* law." (Def.'s Objs. to R & R at 2.) Although it is true that *Sandin* addressed the constitutional rights of state prisoners, the Court's analysis of liberty interests has been applied to Fifth Amendment claims involving federal prison regulations as well. *Crowder v. True*, 74 F.3d 812, 814–15 (7th Cir.1996); *see*

---

1. Defendants, in their objections, continue to maintain dismissal is warranted on the pleadings alone. I find this argument unpersuasive, noting in particular recent Second Circuit rulings suggesting that the "atypical and significant hardship prong of a *Sandin* liberty analysis may require fact-finding." *Sealey v. Giltner*, 116 F.3d 47, 52 (2d Cir.1997); *see also Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir.1997); *Miller v. Selsky*, 111 F.3d 7, 8–9 (2d Cir.1997); *Giakoumelos v. Coughlin* 88 F.3d 56, 62 (2d Cir.1996); *Samuels v. Mockry*,

77 F.3d 34, 38 (2d Cir.1996); *Cespedes v. Coughlin*, 969 F.Supp. 254 (S.D.N.Y.1997).

2. As will be discussed below, I find it unnecessary at this stage of the pleadings to find that plaintiff has made such a showing; I rule only that material questions of fact remain unresolved as to whether plaintiff Tellier has such a liberty interest.

3. Summary judgment was granted as to defendant Sharon Fields.

also *M.B. # 11072–054 v. Reish*, No. 95 CIV. 0156, 1996 WL 169363, at *5 (S.D.N.Y. April 11, 1996) (applying *Sandin* where administrative detention was of federal prisoner), *aff'd*, 119 F.3d 230 (2d Cir. 1997); *Hagan v. Tirado*, 896 F.Supp. 990, 994–95 (C.D.Ca.1995) (same).[4] The Second Circuit Court of Appeals has not expressly ruled on whether § 541.22 gives rise to a liberty interest on the part of federal prisoners. However the Second Circuit Court of Appeals has long held that state prisoners have a liberty interest in remaining free from administrative confinement where prison regulations "specify certain conditions that must be met to permit a prisoner's placement" in such confinement. *Soto v. Walker*, 44 F.3d 169, 172 (2d Cir.1995); *see also Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir.1994); *Russell v. Coughlin*, 910 F.2d 75, 77 (2d Cir.1990); *Gittens v. LeFevre*, 891 F.2d 38, 40 (2d Cir.1989). Furthermore, in the wake of *Sandin*, it has declined invitations to overturn these rulings. *Sealey*, 116 F.3d at 52.

I note that defendants call attention to decisions outside of the Second Circuit suggesting that § 541.22 does not create a constitutionally protected liberty interest. *See Crowder v. True*, 74 F.3d 812, 815 (7th Cir.1996); *Moore v. Ham*, 986 F.2d 1428, 1993 WL 5874, at *1 (10th Cir. Jan.12, 1993); *Eggleton v. Gluch*, 916 F.2d 712, 1990 WL 155316, at *2 (6th Cir. Oct.15, 1990); *Hagan v. Tirado*, 896 F.Supp. 990 (C.D.Ca.1995); *Franklin v. True*, No. 92 C 604, 1994 WL 559228 (N.D.Ill. Oct.7, 1994); *Enigwe v. Nugent*, No. 92–5339, 1993 WL 54489 (E.D.Pa. Feb.26, 1993); *Awalt v. Whalen*, 809 F.Supp. 414 (E.D.Va.1992); *but see Maclean v. Secor*, 876 F.Supp. 695, 701–02 (E.D.Pa.1995) (liberty interest created by federal administrative detention regulations); *Von Kahl v. Brennan*, 855 F.Supp. 1413, 1417 (M.D.Pa.1994) (same); *Kimberlin v. Quinlan*, 774 F.Supp. 1, 8–9 (D.D.C.1991) (same), *rev'd on other grounds*, 6 F.3d 789 (D.C.Cir.1993), *cert. granted*, 513 U.S. 1123, 115 S.Ct. 929, 130 L.Ed.2d 876 (1995), *vacated*, 515 U.S. 321, 115 S.Ct. 2552, 132 L.Ed.2d 252 (1995). I find the decisions cited by defendants unpersuasive for two main reasons. First, in all but one of the decisions supporting the proposition that § 541.22 does not give rise to a constitutionally protected liberty interest,[5] the courts base their analysis solely on the language of the regulation.[6] This methodology was discredited by *Sandin*, which directs courts to assess "the nature of the deprivation" endured by a prisoner

---

4. Magistrate Judge Bernikow's reliance on these cases is especially appropriate given the similarity of state and federal regulations governing administrative detention. Indeed, the federal regulation arguably limits official discretion even more than the analogous state regulation. *Compare* New York Comp.Codes R. & Regs. tit. 7, § 301.4 (1997) (providing that inmates may be placed in administrative segregation when their presence in general population "would pose a threat to the safety and security of the facility"; requiring hearing within 14 days of inmate's confinement and reviews every seven days for first two months and every thirty days thereafter) *with* 28 C.F.R. § 541.22 (requiring that officials ascertain that administrative detention is "warranted" prior to placement; providing with greater specificity the circumstances that would warrant such placement; requiring notice within 24 hours of confinement, an initial review within three days as well as another after seven days of confinement, and further reviews on both weekly and monthly basis).

5. *Crowder*, the only post-*Sandin* case cited for this proposition, differs from the instant case in that in *Crowder* there was no allegation of a lack of notification, and plaintiff was held for only three months. *Crowder*, 74 F.3d at 815. Moreover, the court does follow the approach taken by courts in the Second Circuit in the wake of *Sandin* —as discussed more fully below. Specifically, the court in *Crowder* fails to engage in the factual inquiry required by the Second Circuit Court of Appeals; the court provides no analysis of the conditions of plaintiff's confinement, nor does it consider the period of segregated confinement in relation to plaintiff's total sentence. *Id.*

6. The only other post-*Sandin* opinion upon which defendants rely concerns § 541.23, which regulates administrative detention in protection cases. *See Hagan*, 896 F.Supp. at 993.

rather than basing their liberty interest analysis solely on the linguistic intricacies of a particular regulation. *Sandin,* 515 U.S. at 480–81, 115 S.Ct. 2293.[7] Second, all of the cases proffered by defendants involve relatively short periods of confinement, ranging from three days to six months, as opposed to the 522 days at issue here.[8] Accordingly, I conclude that defendants have not provided adequate grounds for holding as a matter of law that § 522.41 does not create a protected liberty interest in remaining free from administrative confinement.

█ In their second objection, defendants argue that Magistrate Judge Bernikow misconstrued the Supreme Court's ruling in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), insofar as he suggested that prisoners could assert a protected liberty interest "whenever the terms of their restraint create an 'atypical and significant hardship.'"

(Def.'s Objs. to R & R at 2.) This ruling, they contend, is "wholly at odds with *Sandin*'s conclusion that the use of administrative segregation is 'totally discretionary.'" (Def.'s Objs. to R & R at 13.) On defendants' reading of *Sandin* and its progeny, administrative segregation "is not an atypical' restraint as a matter of law, and cannot give rise to a constitutional claim." (Def.'s Objs. to R & R at 3.)

This Court does not read *Sandin* as defining all forms of administrative detention as discretionary in nature.[9] Nor has the Second Circuit Court of Appeals read *Sandin* to eliminate all due process claims based upon administrative segregation. *Sealey,* 116 F.3d at 52; *see also Miller,* 111 F.3d at 9 (noting that *Sandin* did not hold that segregated confinement could never present an "atypical, significant deprivation.").[10] The Second Circuit has allowed that "*Sandin* may be read as calling into

---

7. It should be noted that the "less technical" *Sandin* analysis is not necessarily more stringent; it may lead a court to find a liberty interest where the language-based test did not. *Quartararo v. Catterson,* 917 F.Supp. 919, 937 (E.D.N.Y.1996).

8. Two of the circuit court cases they cite, *Eggleton v. Gluch,* 916 F.2d 712, 1990 WL 155316, at *2 (6th Cir.1990), and *Moore v. Ham,* 986 F.2d 1428, 1993 WL 5874, at *1 (10th Cir.1993), may be further distinguished by noting that plaintiffs were confined pending transfer or investigation of misconduct while incarcerated, and notification of reason for confinement was provided within the 24–hour period required under § 541.22.

9. The passage cited in defendants' motion papers refers to administrative and protective detention regulations in Hawaii and makes no blanket pronouncement that all administrative segregation is "totally discretionary" in nature. *Sandin,* 515 U.S. at 486, 115 S.Ct. 2293. It should be noted that New York state regulations pertaining to administrative detention have not been so viewed by courts in the Second Circuit. *See, e.g., Spence v. Senkowski,* No. 91–CV–955, 1997 WL 394667, at *7 (N.D.N.Y. July 3, 1997) (observing that in New York, "administrative and protective custody are not totally discretionary"); *Martinez v. Coombe,* No. 95–CV–1147, 1996 WL 596553, at *4 (N.D.N.Y. Oct.15, 1996) (same).

10. Defendants object to Magistrate Judge Bernikow's reliance on cases involving disciplinary as opposed to administrative segregation. (*See* Def.'s Objs. to R & R at 8–9.) However, as noted above, *Sandin* itself involved disciplinary segregation, and courts in the Second Circuit have consistently applied the *Sandin* liberty interest analysis in cases involving administrative as well as disciplinary segregation. *See, e.g., Sullivan v. Schweikhard,* 968 F.Supp. 910, 913 (S.D.N.Y.1997) (observing that district courts have "extended *Sandin*'s analysis to administrative segregation"). Courts in the Second Circuit have not drawn a sharp distinction between these forms of confinement when engaging in Sandin liberty interest analyses. The important consideration is not whether the confinement is designated as administrative or disciplinary, but whether it imposes an "atypical and significant hardship" on the plaintiff. *See, e.g., Sealey,* 116 F.3d at 52 (relying on cases involving disciplinary segregation in determining whether plaintiff has liberty interest in remaining free of administrative segregation); *Williams,* 1997 WL 527677, at *5–8 (relying on cases involving administrative segregation in determining whether plaintiff has liberty interest in remaining free of disciplinary segregation).

question the continuing viability of our cases holding that New York regulations afford inmates a liberty interest in remaining free from administrative segregation." *Rodriguez v. Phillips*, 66 F.3d 470, 480 (2d Cir.1995); *see also Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996). However, as alluded to above, the Second Circuit has repeatedly refused to rule as a matter of law that administrative segregation implicates no constitutionally protected liberty interest. This point was recently confirmed in *Brooks*, where the court emphasized that it had "never held" that prisoners "have no liberty interest in avoiding long-term administrative confinement." *Brooks*, 112 F.3d at 49; *but see Powell v. Scully*, No. 92 Civ. 5334, 1996 WL 145962, at *3 (S.D.N.Y.1996) (finding "that as a matter of law *Sandin* has overruled previous case law in this Circuit holding that New York regulations afford inmates a liberty interest in remaining free from administrative segregation"; allowing that analysis would differ where such segregation "was being used arbitrarily or in retaliation for the exercise of a protected right").

The Second Circuit Court of Appeals interprets Sandin to require that prisoners prove both (1) that the confinement creates an "atypical and significant hardship" and (2) that the government has granted inmates—by regulation or statute—a protected liberty interest in remaining free from that confinement. *Frazier*, 81 F.3d at 317; *accord Santana v. Keane*, No. 90 CIV. 6309, 1996 WL 465751, at *3 (S.D.N.Y. Aug. 14, 1996). The Second Circuit has indicated that the first prong of the *Sandin* liberty interest analysis usually entails a factual inquiry into the conditions of confinement. *Sealey*, 116 F.3d at

52; *see also Miller*, 111 F.3d at 8–9 (providing that "district courts must examine the circumstances of a confinement to determine whether that confinement affected a liberty interest"); *accord Brooks*, 112 F.3d at 49; *Giakoumelos*, 88 F.3d at 62; *Samuels*, 77 F.3d at 38 (2d Cir.1996); *Cespedes*, 969 F.Supp. at 254; *Gonzalez v. Coughlin*, 969 F.Supp. 256 (S.D.N.Y. 1997).[11]

In conducting these individualized, factual inquiries, the Second Circuit Court of Appeals attends to the nature of the prisoner's confinement in relation to the "ordinary prison conditions" and the length of time spent in confinement in the context of his total sentence. *Brooks*, 112 F.3d at 48–49. *See also Barnes v. Starks*, No. 95 CIV. 4891, 1996 WL 648956 (S.D.N.Y. Nov.6, 1996); *Delaney v. Selsky*, 899 F.Supp. 923, 927–28 (N.D.N.Y.1995). Courts in this circuit have denied motions for summary judgment where the duration of confinement was far less than the 522 days alleged by plaintiff Tellier in his complaint. *Bishop v. Keane*, 1995 WL 384443, at *3 (S.D.N.Y. June 28, 1997) (whether 87 days in confinement imposes atypical and significant hardship is question of fact precluding summary judgment); *Wright v. Miller*, 973 F.Supp. 390, 1997 WL 438795, at *3 (S.D.N.Y. July 31, 1997) (12–15 months in SHU may create atypical and significant hardship; summary judgment denied); *Delaney v. Selsky*, 899 F.Supp. 923, 927–28 (N.D.N.Y.) (noting that *Sandin* does not compel the conclusion that 365 days' SHU confinement does not impose an "atypical and significant hardship on [plaintiff]"; material questions of fact preclude summary judgment because 197 days' confinement may have imposed

---

**11.** Other circuits have taken a similar position. *See, e.g., Kennedy v. Blankenship*, 100 F.3d 640, 642–43 (8th Cir.1996); *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir.1996); *Williams v. Fountain*, 77 F.3d 372, 374 n. 3 (11th Cir.1996), *cert. denied*, 519 U.S. 952, 117 S.Ct. 367, 136 L.Ed.2d 257, (1996). *Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir.1995). *But cf. McGuinness v. Dubois*, 75

F.3d 794, 797 n. 3 (1st Cir.1996) (holding that *Sandin* precluded finding of liberty interest in case involving 30–day solitary confinement); *Rimmer–Bey v. Brown*, 62·F.3d 789, 790–91 (6th Cir.1995) (finding that plaintiff's placement in administrative detention did not meet *Sandin* standard of "atypical and significant hardship").

"atypical and significant hardship" on seven-foot plaintiff). Moreover, at least one district court has held that 376 days of segregated confinement presumptively gives rise to a liberty interest. *Lee v. Coughlin*, 902 F.Supp. 424, 431 n. 9 (S.D.N.Y.1995) (court "hard pressed to believe that 376 days in SHU would not constitute an 'atypical and significant hardship' as defined by *Sandin*."), *recons. granted*, 914 F.Supp. 1004 (S.D.N.Y. 1996).[12]

■ In his moving papers, plaintiff states that "[t]he conditions in administrative detention were in sharp contrast to those condition [sic] lavishly afforded to the inmates' [sic] of general population." (Decl. of Plaintiff at ¶ 15.) He further indicates that although he "did not raise that conditions in administrative detention were inadequate [in his. complaint, this] does not mean that he does not intend to argue such a position in the future." (Plaintiff's Mem. of Law in Opp'n at 2.) Defendants have not offered any evidence refuting plaintiff's claim; they have not shown that conditions imposed upon plaintiff mirrored those of the general prison population or those of inmates held in segregated confinement for other reasons. Nor have defendants offered a clear statement of the proportion of time plaintiff spent in SHU to his total sentence. An affidavit from a staff attorney at MCC indicates that plaintiff was still serving out a state sentence when transferred to MCC on November 6, 1992; plaintiff had been sentenced to a term of 2 to 6 years by the New York State Supreme Court on March 13, 1991. (*See.* Supp.Decl. of Raia ¶ 2.)[13] Whether plaintiff's eighteen-month detention in SHU is compared to a total sentence of 2 years or 6 years, I agree with Magistrate Judge Bernikow's conclusion that plaintiff has sufficiently stated a due process claim. Moreover, I find summary judgment for defendants inappropriate in view of the undeveloped factual record as to the conditions of plaintiff's confinement.

■ In their third objection, defendants insist they are entitled to summary judgment because plaintiff received all the process due to him. Although it is true that a prisoner placed in administrative confinement receives "fewer procedural protections" than those in disciplinary confinement, *Matiyn v. Henderson*, 841 F.Supp. 31, 34 (2d Cir.1988), he is entitled to "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Hewitt v. Helms*, 459 U.S. 460, 476, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *see also Matiyn*, 841 F.2d at 36. The prisoner must be afforded an opportunity to be heard "at a meaningful time and in a meaningful manner," *Lowrance*, 20

---

**12.** A number of district courts have dismissed claims where the duration of segregated confinement was one year or less, *see, e.g., Williams v. Kane*, No. 95 CIV. 0379, 1997 WL 527677, at *6–8 (S.D.N.Y. Aug. 25, 1997) (collecting cases); *Polanco v. Allan*, No. 93–CV–1498, 1996 WL 250237 at *3 (N.D.N.Y. May 6, 1996), *reaff'd on recons.*, 1996 WL 377074, at *2 (N.D.N.Y. July 5, 1996) (finding that "general rule of a year or less seems appropriate, absent extraordinary circumstances"). However, only one district court has found no liberty interest where segregation was for more than the 522–day segregation imposed on plaintiff Tellier. *See Medina v. Bartlett*, No. 94–CV–0358E(H), 1995 WL 529624, at *2 (W.D.N.Y. Aug.28, 1995) (no liberty interest created by 2,555 days in administrative segregation; no breach of regulations involved and plaintiff was confined pending outcome of trial in which he was charged and eventually convicted of murdering inmate); *see also Uzzell v. Scully*, 893 F.Supp. 259, 263 (S.D.N.Y. 1995) (suggesting that prisoners have no protected liberty interest in remaining free from keeplock; plaintiff placed in keeplock on disciplinary charges for 45 days had no "standing" to bring § 1983 action). *But see Porter v. Coughlin*, 964 F.Supp. 97, 103 (W.D.N.Y. 1997) (36 months in SHU creates liberty interest).

**13.** This declaration also indicates that plaintiff was subsequently convicted on federal racketerring charges and sentenced to serve a prison term of life plus 25 years on December 29, 1994—after he his stay in SHU at MCC had ended. (*See* Supp.Decl. of Raia ¶ 1.)

F.3d at 536 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)), so that he may "avoid an improvident or wrongful administrative confinement." *Lowrance*, 20 F.3d at 536 (quoting *Gittens*, 891 F.2d at 41). The Second Circuit Court of Appeals has found that the failure to provide such "informal review procedures within even as short a time as seven days in connection with a transfer into administrative confinement states a due process claim." *Soto*, 44 F.3d at 172; *see also Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir.1990) (ten-day delay violative of due process); *Gittens*, 891 F.2d at 41 (seven-day delay violative of due process).[14] Moreover, the Court has specifically cautioned officials against using administrative segregation as a "pretext for indefinite confinement of an inmate." *Hewitt*, 459 U.S. at 477 n. 9, 103 S.Ct. 864; *accord Soto*, 44 F.3d at 172 n. 4; *Giano v. Kelly*, 869 F.Supp. 143, 149. To guard against such an abuse of discretion, the Court requires that "prison officials must engage in some sort of periodic review of confinement" of inmates placed in administrative segregation. *Hewitt*, 459 U.S. at 477 n. 9, 103 S.Ct. 864; *accord Giano*, 869 F.Supp. at 149.

█ As Magistrate Judge Bernikow correctly concluded, material facts remain unresolved as to the process accorded plaintiff. Specifically, a material question of fact exists as to when plaintiff received official notice of the reasons for his administrative detention. Plaintiff claims he never received an administrative detention order specifying the reasons for his confinement. Defendants provide a "duplicate copy" of the original order (without plaintiff's signature) and supporting declarations indicating that plaintiff received a copy of the original order on November 6, 1992. (*See* Raia Dec. ¶ 7 and Ex. C; Gerlinski Dec. ¶¶ 4, 5.) Also unresolved are material questions as to whether plaintiff

had a meaningful opportunity to be heard concerning his confinement within a reasonable time and whether there were adequate, periodic reviews of his status. Plaintiff contends that no hearing was held concerning his detention status until May 4, 1993, after he had served almost six months in the SHU. Defendants provide no documentation of a hearing prior to January 4, 1993 (a full two months after placement in SHU) but offer declarations maintaining that the requisite thirty-day reviews were conducted in plaintiff's case. (*See* Gerlinski Decl. ¶¶ 7, 8; Trammel Decl. ¶¶ 5, 6.) However plaintiff contends that several of the forms documenting 30-day reviews were falsified, and offers corroborating declarations supporting this claim. (*See* Abdullah Decl. ¶¶ 6, 7; Cox Decl. ¶¶ 5, 7.) In light of these material factual disputes, I find that defendants have not demonstrated that they "clearly complied" with due process requirements in the instant case.

█ Lastly, defendants contend that Judge Bernikow's rejection of their qualified immunity defense was erroneous, insofar as he held that "plaintiff's claim asserted a 'clearly established' constitutional right with 'sufficiently definite' boundaries so that defendants must have known that their actions were unlawful." (Def.'s Objs. to R & R at 8–9.) Defendants misconceive Magistrate Judge Bernikow's reasoning on this issue; he makes the more provisional finding that the facts concerning the availability of the qualified immunity defense are not undisputed.

Recognizing that courts must engage in a "particularized" factual inquiry to determine whether official action is protected by qualified immunity, *see Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *accord Whitley v. Westchester County*, No. Civ. 0420, 1997 WL 659100 (S.D.N.Y. Oct. 22, 1997), I find Magistrate Judge Bernikow's ruling appropriate in the circumstances of this

---

**14.** In *Lowrance*, 20 F.3d at 536, the only case cited by defendants in support of this objection, (Def.Memo. at 14), it was undisputed that the prisoner was afforded the opportunity to submit a written complaint on the day he was placed in administrative confinement.

case. Moreover, his recommendation is in accordance with the summary judgment standard specified for qualified immunity defenses in the Second Circuit. Under this standard, defendants are not entitled to summary judgment "if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir.1995). An officer's actions are objectively unreasonable "when no officer of reasonable competence would have made the same choice in similar circumstances." *Id.* at 421. Courts should refrain from granting summary judgment on grounds of qualified immunity until disputed factual issues pertaining to the defense are resolved. *Id.*

As has been noted already, the law at the time of plaintiff's detention had clearly established that regulations like § 541.22 created a liberty interest in remaining free of administrative segregation, and defined the scope of the official's permissible conduct. *See, e.g., Wright v. Smith*, 21 F.3d 496, 500 (2d Cir.1994) (holding that state prison regulation mandating hearing within 14 days left "no doubt" that prison officials "acted unconstitutionally where confinement . . . continued without a hearing, for 67 days").[15] Moreover, even in the aftermath of *Sandin*, there is continued support for the existence of the due process claim asserted by plaintiff. *See, e.g., Sealey*, 116 F.3d at 52. It is nonetheless true that if defendants established that no rational jury could find that it was objectively unreasonable for them to have believed that their actions in regard to plaintiff's administrative segregation did not violate plaintiff's due process rights, they would be entitled to summary judgment on grounds of qualified immunity. However I agree with Magistrate Judge Bernikow's assessment of the state of the

record; as detailed above, material facts remain in dispute concerning the actions taken by officials during the period of plaintiff's confinement. The Court cannot say as a matter of law that the conduct of these officers did not violate the constitutionally guaranteed rights of plaintiff. Therefore, I reject defendants' qualified immunity defense at this stage of the proceedings.

### III. Conclusion

For the foregoing reasons, I adopt Magistrate Judge Bernikow's Report denying defendants' motion for summary judgment in this action with respect to all defendants other than Fields. Defendant Field's motion for summary judgment is granted and the complaint against her dismissed.

SO ORDERED.

---

**15.** Defendants' discussion of the "confusion" engendered by *Sandin*, (Def.'s Objs. to R & R at 16), does not support their qualified immunity defense, given that the actions challenged in the action occurred in the period from November 6, 1992 through April 4, 1994. *Sandin* was not decided until June 19, 1995. *See Anderson*, 483 U.S. at 640, 107 S.Ct. 3034

(courts must consider law as it existed at the time the conduct in question occurred when determining whether officials entitled to qualified immunity defense); *see also Delaney*, 899 F.Supp. at 928 ("The fact that the law changed in 1995 does not indicate that the law was unclear in 1991.").