**Michael Aloysius BARNDT, Petitioner**

v.

**PENNSYLVANIA DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 3, 2006.

Decided June 28, 2006.

Philip D. Lauer, Easton, for petitioner.

Debra Sue Rand, Asst. Counsel and Michael A. Farnan, Chief Counsel, Camp Hill, for respondent.

BEFORE: PELLEGRINI, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Before this Court are the Preliminary Objections in the Nature of a Demurrer (Objections) filed by the Pennsylvania Department of Corrections (DOC) to the Petition for Review (Petition) filed by Michael Aloysius Barndt (Barndt). As set forth below, we grant DOC's Objections, and dismiss Barndt's Petition.

On August 31, 2002, Barndt was serving a period of supervised release from a federal sentence previously imposed by the United States District Court for the District of New Jersey. On that date, Barndt was arrested following a traffic stop in Northampton County, Pennsylvania, in the wake of the discovery of his possession of illegal drugs. Barndt was released on bail three days later, on September 2, 2002, and following that release, Barndt became a fugitive with regard to both his prior

federal charges, and to his then-pending state charges.

Subsequently, Barndt was apprehended, incarcerated by the federal authorities effective April 22, 2003, and sentenced to serve an additional period of confinement on federal charges with a maximum release date of December 13, 2004. On May 12, 2003, the Court of Common Pleas of Northampton County (Trial Court) issued a bench warrant for Barndt relating to his state charges, and the warrant was served on the United States Marshall Service. Subsequently, Barndt was committed to Northampton County Prison in Easton, Pennsylvania.[1]

A trial on the state charges was held in the Trial Court on May 10, 2004, and on August 13, 2004, the Trial Court sentenced Barndt to serve time in a state correctional institution on the following relevant convictions:

(1) possession of heroin: 11 months to 3 years;

(2) furnishing false identification to law enforcement: 3 months to 12 months, concurrent with (1);

(3) unlawful possession of cocaine; 8 months to 3 years, consecutive to (1) and (2);

(4) possession of drug paraphernalia; 3 months to 12 months, concurrent with (1) and (2).

In the sentencing forms completed by the Trial Court for the above-listed sentences, the Trial Court specifically checked the boxes marked "Credit Time Served" in the section devoted to the "Sentence Imposed" for each sentence.

■ Thereafter, DOC sent a letter to the Trial Court sentencing Judge, dated March 30, 2005, requesting assistance in clarifying and applying the terms of the Trial Court's state sentencing in relation to Barndt's credit for time served. *See* DOC Objections, Exhibit A.[2] DOC asserted

---

1. Barndt asserts that he was transferred to state custody on May 13, 2003, and has remained in state custody at all times thereafter pursuant to the Trial Court's warrant. DOC asserts that Barndt was transferred to state custody following his federal maximum date of December 13, 2004. Neither Barndt's Petition nor DOC's Objections establish any precise date on which (or, whether) Barndt was transferred from federal to state *physical* custody. However, correspondence appended in support of DOC's Objections references, without specification of any precise dates and in contradiction to DOC's December 13, 2004 transfer assertion, Barndt's incarceration in Northampton County Prison while serving his previously imposed federal sentence. *See* DOC Objections, Exhibit A. For our purposes in the instant matter, we accept Barndt's assertions as true that he was physically held in the Northampton County Prison from May 13, 2003, ongoing.

2. Barndt objects to DOC's attachment of the actual letter from DOC, and the Trial Court's letter reply thereto, for purposes of this Court's review of the Objections at issue. Barndt asserts that since he did not attach the

letters to his Petition, they constitute an improper speaking demurrer averring the existence of facts not apparent from the face of the challenged pleading. *See Wells v. Southeastern Pennsylvania Transportation Authority,* 105 Pa.Cmwlth. 115, 523 A.2d 424 (1987). We disagree, in that a limited exception to the rule against speaking demurrers exists for documents filed in support of a demurrer where a plaintiff has averred the existence of certain written documents and premised his cause of action upon those documents. *See St. Peter's Roman Catholic Parish v. Urban Redevelopment Authority of Pittsburgh,* 394 Pa. 194, 146 A.2d 724 (1958), and *Detweiler v. School District of Borough of Hatfield,* 376 Pa. 555, 104 A.2d 110 (1954). The DOC and Trial Court letters at issue herein are matters not collateral to Barndt's Petition, but which arose out of the Petition itself, and their existence is in fact averred therein. Petition at 5, ¶ 19a. Barndt's second issue hereto is in fact completely predicated upon the existence of those letters, and their content. *Id.* As such, Barndt's averment of the existence of the letters, as well as his direct reliance thereon within his Petition, enable and necessitate our

to the Trial Court that, notwithstanding Barndt's incarceration in Northampton County Prison, he was serving the previously imposed federal sentence until that sentence's maximum date on December 13, 2004, which time cannot be duplicatively counted as credit towards his state sentence. The DOC letter included a brief synopsis of sentencing credit law on the asserted point, and further noted that DOC had not credited Barndt's state sentence for the period of confinement for his federal sentence.[3] DOC further requested that the Trial Court clarify its sentencing order language indicating that Barndt should receive credit for time served, and indicated that it would apply the credit as advised by the Trial Court following the Trial Court's consideration of DOC's letter.

The Trial Court, by letter dated April 4, 2005, stated that its intent was only that Barndt receive "any credit that he was entitled to receive", and that it did not intend for Barndt to receive any duplicate credit. *See* Objections, Exhibit B. The Trial Court's letter further stated that, after reading DOC's letter to the Trial Court, it advised that Barndt not receive the additional duplicative credit as described in DOC's letter.

Barndt has now filed his Petition, in the nature of mandamus, in this Court's original jurisdiction, requesting an order that DOC recalculate Barndt's sentence to reflect credit towards his state sentence for time served for the period from May 13, 2003 (the date on which the Trial Court

issued its bench warrant for the state charges), to December 13, 2004 (the date on which Barndt's federal sentence expired). DOC has filed herewith its Objections to Barndt's Petition, which are currently before the Court for disposition.

A writ of mandamus is an extraordinary remedy which seeks to compel official performance of a ministerial act or mandatory duty, as opposed to a discretionary act. *Griffin v. Department of Corrections*, 862 A.2d 152 (Pa.Cmwlth.2004). Because the sentence imposed by a court involves a question of law and involves no discretion on the part of DOC, a writ of mandamus will lie to compel DOC to properly compute a prisoner's prison sentence. *Id.*

Preliminary objections in the nature of a demurrer admit as true all well and clearly pleaded material, relevant factual averments, and all inferences fairly deducible therefrom. *Griffin.* However, conclusions of law and unjustified inferences are not so admitted. *Id.* A demurrer will not be sustained unless the face of the pleadings shows that the law will not permit recovery, and any doubts should be resolved against sustaining the demurrer. *DeHart v. Horn, Com'r of Department of Corrections*, 694 A.2d 16 (Pa.Cmwlth.1997).

DOC first argues that any time spent in pre-sentence detention cannot be credited to an unrelated sentence being actively served by an inmate. DOC cites to Section 9760(1) of the Sentencing Code,[4] 42

---

consideration of the letters as within the exception to the general rule prohibiting speaking demurrers. *St. Peters; Detweiler. Accord Martin v. Department of Transportation*, 124 Pa.Cmwlth. 625, 556 A.2d 969 (1989).

**3.** DOC did credit Barndt's sentence for the period from August 31, 2002, to September 2, 2002, which time represents the period between when Barndt was arrested and detained on the state charges, and when he was released on bail. This period of credit is not at dispute in the instant matter.

**4.** Section 9760 reads:
   Credit for time served
   After reviewing the information submitted under section 9737 (relating to report of outstanding charges and sentences) the court shall give credit as follows:

Pa.C.S. § 9760(1), which permits credit "for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed ..." DOC emphasizes that the pre-state-sentence custodial period for which Barndt seeks credit was time in which Barndt was actively serving his unrelated federal sentence, and that period of confinement was not spent as a sole result of the state criminal charge.

Barndt argues that his Petition alleges that he was serving a period of supervised release imposed by the United States District Court for the District of New Jersey, at the time of his commission of the state offenses on which he is incarcerated, and that he thereafter became a fugitive with respect to *both* the state charges and the federal supervised release. It was following that fugitive period, Barndt asserts in his Petition, that he was thereafter incarcerated and sentenced to serve a period of additional confinement. Barndt argues that, although his Petition does not address this point, the additional period of confinement ordered by the federal authorities related directly to the conduct which forms the basis for the state prosecution.

■ We disagree that Barndt's federal sentence for which he now seeks credit[5]

> (1) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.
>
> (2) Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody under a prior sentence if he is later reprosecuted and resentenced for the same offense or for another offense based on the same act or acts. This shall include credit in accordance with paragraph (1) of this section for all time spent in custody as a result of both the original charge and any subsequent charge for the same offense or for another offense based on the same act or acts.
>
> (3) If the defendant is serving multiple sentences, and if one of the sentences is set aside as the result of direct or collateral attack, credit against the maximum and any minimum term of the remaining sentences shall be given for all time served in relation to the sentence set aside since the commission of the offenses on which the sentences were based.
>
> (4) If the defendant is arrested on one charge and later prosecuted on another charge growing out of an act or acts that occurred prior to his arrest, credit against the maximum term and any minimum term of any sentence resulting from such prosecution shall be given for all time spent in custody under the former charge that has not been credited against another sentence. 42 Pa.C.S. § 9760.

**5.** We reject Barndt's implied argument, apparent throughout his brief hereto, that any credit due to him for time served somehow equates to a default sentencing order of consecutive sentences for both his federal and state sentences in relation to each other. While Barndt correctly notes that the Trial Court failed to specify whether his state and federal sentences were to run consecutively or concurrently, in potential violation of Pa. R.Crim.P. No. 705 (requiring such articulation by a trial court where a defendant faces multiple sentences), that potential error is not before us presently. Notwithstanding Barndt's repeated references to arguments centered around consecutive and concurrent sentencing, the sentencing reports appended to Barndt's Petition make clear that the trial court intended merely for Barndt to receive, literally, "credit for time served." *See* Petition, Exhibit B. Additionally, the Trial Court Judge's correspondence to DOC makes clear that, despite his failure to abide by the mandate of Rule 705 in his order, his intention was to award Barndt the proper credit for time served, and not to award any credit for concurrent sentencing. *See* Objections, Exhibit B. It is axiomatic that credit for time served does not equate to a concurrent sentence.

Additionally, Barndt's Petition contemplates no argument whatsoever founded upon

towards his state sentence was "a result of the criminal charge for which a prison sentence [was] imposed" for purposes of computing credit for time served under Section 9760 of the Sentencing Code. We are aware of no precedent—and Barndt is unable to assert any applicable authority—for such a reading of Section 9760, or, more saliently, for the application of credit for time served towards both a prior original federal sentence, and to a new state sentence imposed in the wake of a state criminal charge.

We first note that both Barndt's Petition is silent as to the precise cause and/or charges that formed the basis for his federal detention following the state criminal charges at issue *sub judice.* In relation to this issue, Barndt's Petition states:

> 8. At the time of the commission of the [state] offenses on which [Barndt] is incarcerated, he was serving a period of supervised release imposed in the United States District Court for the District of New Jersey.
>
> 9. Following his release on bail on the aforementioned [state] charges, [Barndt] became a fugitive **with respect to both those [state] charges and the Federal supervised release.**
>
> 10. [Barndt] was thereafter incarcerated by Federal Authorities, and sentenced to serve an additional period of confinement.

Petition at 3 (emphasis added). Beyond those Petition allegations, Barndt has provided no documentation, or any evidence or argument whatsoever, as to precisely what charges his federal confinement was predicated upon. Admitting Barndt's factual averments as true for our instant purposes,[6] the only inference fairly deducible therefrom in regards to this issue is that supported by Paragraph 9 of his Petition; namely, that the "[state] charges **and the Federal supervised release**" comprise two distinct and separate grounds for Barndt's subsequent state and federal sentences. Stated otherwise, and as implicitly stated by Barndt, Barndt's federal sentence and confinement can only be inferred to have been for violations of the conditions of his prior supervised release, while his state sentences and confinement where unquestionably for violations of our Commonwealth's Criminal Code. *See also* Petition, Exhibits A–E, G. Simply put, since the only reasonably inferable facts herein are that Barndt was again placed in federal custody as a result of violations of the conditions of his federal supervised release, Barndt has failed to allege that any federal charges have directly resulted from the acts that resulted in his state criminal charges.

Notwithstanding this lack of specificity and fact assertion within his Petition, we find no authority for the application of Section 9760 to the instant unique set of facts, and further find no authority whatsoever for the double credit for time served that Barndt seeks herein. Our precedents have not directly addressed Barndt's current situation, wherein he seeks pre-state-sentence credit for detention on a federal sentence imposed following a period of federal supervised release, in the wake of new state criminal charges.

Our Supreme Court, however, has recently addressed a similar if distinguishable factual situation—assuming,

---

consecutive/concurrent sentencing, but instead repeatedly and solely requests credit for time served. Petition at 3–5, ¶¶ 14, 16, 17, 19. As such, on this additional dispositive basis we will not consider Barndt's issues and argument within his brief, regarding consecutive/concurrent sentencing, which were not raised in his Petition.

**6.** *Accord Griffin.*

*arguendo,* that Barndt's federal pre-state-sentence detention did indeed flow from his state charges—in *Martin v. Board of Probation and Parole,* 576 Pa. 588, 840 A.2d 299 (2003). *Martin* addressed a situation where an offender sought credit against an original state sentence for confinement resulting after the Board of Probation and Parole (Board) lodged a detainer against the offender, but prior to trial on new state criminal charges. Addressing, in relevant part, credit merited under Section 9760, the Supreme Court noted that "this statutory section does not specifically contemplate credit for time served following a parole violation and revocation". *Martin,* 576 Pa. at 597, 840 A.2d at 304. On that issue, the Supreme Court ultimately held that where an offender is incarcerated on both a Board detainer and new criminal charges, all time spent in confinement must be credited to *either* the new sentence which flowed from the new criminal charges, *or* to the original sentence as enacted under the detainer. *Id.* at 605, 840 A.2d at 309.

While *Martin* is factually distinguishable from the instant matter, we find its reasoning regarding the application of Section 9760 to the instant facts persuasive, and further recognize its value in articulating the principle that "the considerations relevant to the award of credit are just and equitable in nature", and that "[u]nique combinations of circumstances will be presented in different cases that tip the balance for or against the particular allocation of credit." *Id.* at 604, 840 A.2d at 308. We note that *Martin* in no way, expressly or impliedly, contemplates credit for time served to be applied twice towards separate pre-sentencing and post-sentencing detentions which are each predicated upon different charges (i.e., charges stemming from some violation of the conditions of a

federal supervised release, and charges stemming from a state criminal code violation). We find *Martin's* approach, under the facts *sub judice,* consonant with "the equitable principle that time spent in custody pursuant to new criminal charges and a detainer warrant must be credited against *some* period of a parolee's confinement[,]" but not *both. Id.* at 605, n. 6, 840 A.2d at 309, n. 6 (emphasis added).

■ *Martin* recognizes, therefore, that Section 9760 does not contemplate credit for time served to be awarded twice. Similarly, our Courts have consistently held that such double credit for time served is neither contemplated, nor authorized, by Section 9760, albeit again in other distinguished factual scenarios from that presented herein. In *Taglienti v. Department of Corrections,* 806 A.2d 988 (Pa. Cmwlth.2002), we addressed a prisoner's petition in the nature of mandamus seeking credit on parole violation sentences for time served in Pennsylvania that had already been credited towards an unrelated charge for which he was incarcerated in Virginia. Notwithstanding an apparent trial court order that the prisoner be credited towards his Pennsylvania sentence with credit for time served that had already been credited towards the Virginia sentence, we noted, in relevant part:

> [C]redit for time served prior to the sentencing date is governed by Section 9760 which does not provide for credit for time served on unrelated offenses **or when credit has been already credited against another sentence.**

*Taglienti,* 806 A.2d at 993 (emphasis added). *Accord Commonwealth v. Smith,* 853 A.2d 1020 (Pa.Super.2004) (pretrial incarceration, attributable to both a probation detainer and to new criminal charges, must be attributed to *either* new sentence under criminal charge, *or* to probation vio-

lation sentence, but not to both). As such, Barndt's request for double credit under Section 9760 has no support under the law, and must fail.

Barndt next makes an alternative argument that Section 9761(b) of the Sentencing Code [7] authorizes the credit he seeks in this matter. We disagree. As Barndt reluctantly concedes in his brief hereto, *Taglienti* has established that presentence credit is governed by Section 9760, and Section 9761(b) by its express terms provides only for credit for time served after a sentence is imposed. Therefore, as applied to the instant facts, Section 9761(b) contains the discretionary authority only for credit from the date of Barndt's sentencing on his state charges, namely, from August 13, 2004, onward to the expiration date of his federal sentence, namely, December 13, 2004.

■ However, granting credit even from that limited date of sentencing onward, notwithstanding Section 9761(b) authority, would still result in Barndt receiving double credit for that period of incarceration towards both his federal and state sentences. Our reasoning as supported by *Martin*, and in the precedents cited above, is equally applicable to Section 9761: under the current facts, an award of double credit for the time Barndt served towards both his federal and state sentences is neither mandated, nor equitably merited. Section 9761(b) is not mandatory, and its plain language grants discretion to the sentencing court regarding credit for time served under the sentence of a foreign sovereign. Not insignificantly, the correspondence from the Trial Court to DOC buttresses our conclusion that double credit was neither intended nor merited herein, by way of the Judge's unequivocal expression that "[i]t was not my intent that [Barndt] be given duplicate credit." Objections, Exhibit B.

■ Finally, DOC, in its Objections, argues that Barndt is not entitled to due process from DOC itself when it seeks to administratively clarify a sentencing order. DOC's objection on this point is directed towards Barndt's Petition argument that the correspondence between DOC and the Trial Court Judge violated Barndt's due process rights. The crux of Barndt's argument on this issue is that the exchange of correspondence between DOC and the Trial Court, seeking clarification as to DOC's application of the Trial Court's sentencing order, is itself a "decision making process" to which Barndt should be guaranteed an opportunity to be heard in accordance with his procedural due process rights.

In order to determine whether a constitutional violation has occurred, a foundational determination must initially be made as to whether a protected liberty interest exists and, if so, what process is due. *Wilder v. Department of Corrections*, 673 A.2d 30 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 545 Pa. 673, 681 A.2d 1344 (1996) (citing to *Hagan v. Tirado*, 896 F.Supp. 990 (C.D.Cal.1995)). While it is well established that the due process protections of both the Pennsylvania and United States Constitutions must be satis-

---

7.  Section 9761(b) reads, in relevant part:
    Computation and order of service of sentences
    * * *
    Sentences imposed by other sovereigns.—If the defendant is at the time of sentencing subject to imprisonment under the authori-

ty of any other sovereign, **the court may indicate that imprisonment under such other authority shall satisfy or by [sic] credited against both the minimum and maximum time imposed under the court's sentence.**
42  Pa.C.S. § 9761(b) (emphasis added).

fied in the sentencing process itself,[8] Barndt does not directly assert (and we will not hold) that DOC's actions herein are a part of the court sentencing process. Further, we disagree with Barndt's assertion that no opportunity to be heard has been afforded to him in this matter in accordance with his due process rights.

The sentencing phase of a defendant's trial is plainly distinguishable from DOC attempts to apply, and to clarify if so needed prior to applying, the sentencing court's order, due to the sentencing court's actual imposition of a sentence as opposed to DOC's sole function to execute the terms of that sentence. It is beyond dispute that DOC itself does not impose sentences, and has not done so in this matter. As such, no comparable liberty interest can be reasonably discerned to attach to DOC's mere administrative application of a previously adjudicated sentence that would elevate DOC's actions to a level comparable to a court's imposition of a criminal sentence. Accordingly, we find the due process demands of each process to be distinct.

Hence, we further can find no persuasive value in Barndt's attempts to apply precedents solely addressing the due process requirements implicated in the sentencing phase of a trial to the issue at hand, seeking credit from DOC in the interpretation and application of a sentencing order addressing credit after the sentencing process has been completed. *See Wright; Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977); *Specht v. Patterson,* 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967).

We first note that DOC alleges that its approach of using a letter of inquiry to a sentencing judge in instances seeking a sentencing order clarification is a long-standing practice. DOC correctly asserts, in defense of this practice, that since it is not a party to the criminal proceedings—including therein, the sentencing phase before the trial court—it cannot formally petition the sentencing court for clarification following the entry of an order, nor can it force a defendant or district attorney to so petition upon DOC's need. DOC argues that, when an inmate, such as Barndt in the instant matter, disagrees with a trial judge's clarification following DOC's inquiry and subsequent action thereon, a due process remedy is available to the inmate in the form of a petition *nunc pro tunc* to the sentencing court for reconsideration, modification, or clarification of the original sentencing order. We agree.

In *Fajohn v. Department of Corrections,* 547 Pa. 649, 692 A.2d 1067 (1997), a prisoner sought to compel DOC to apply credit for time served, asserted to be a result of a plea bargain, against a sentence previously imposed. DOC argued that the credit in the sentencing order could not be applied, as that credit was violative of the Rules of Criminal Procedure and hence illegal. In concluding that the sentencing order at issue was indeed not a legal order, our Supreme Court articulated the opportunity that a prisoner would be afforded to be heard on the issue:

> [T]he proper avenue for petitioner's request is an application [to the trial court] for re-sentencing in which Fajohn alleges that he has not received the benefit of his plea bargain, coupled with a request that the sentencing court reduce his sentence to the extent of 190 days so that he may receive the benefit of the plea bargain.

---

8. *See, e.g., Commonwealth v. Wright,* 508 Pa. 25, 494 A.2d 354 (1985) (applying Pennsylvania and Federal due process protections in direct appeal from sentencing orders, challenging constitutionality of mandatory minimums used by sentencing court).

Because Pa.R.Crim.P. 1410 allows the trial court to correct its orders before an appeal is taken or upon remand by an appellate court, and because 42 Pa.C.S. § 5505 limits that power to 30 days after the entry of the order, Fajohn's access to the trial court appears to be foreclosed. His appropriate course of action at this point would be to file a motion for modification of sentence *nunc pro tunc* in the court of common pleas, asserting that the sentence as recorded did not reflect the bargain or the intent of the court, a fact which did not become apparent until beyond the thirty day appeal period.

*Fajohn*, 547 Pa. at 652, 692 A.2d at 1068. Although the *Fajohn* Court was not addressing the prisoner's opportunity to be heard within the context of a due process challenge, that precedent clearly articulates two potential opportunities to be heard, either of which would satisfy procedural due process requirements, for a prisoner in Barndt's instant position: either a timely appeal within statutory limits from the sentencing order in the first instance, or, where circumstances would preclude such a timely appeal, a *nunc pro tunc* petition to the sentencing court itself.

We note that Barndt, in his brief to this Court, asserts that he indeed did file a *nunc pro tunc* petition with the Trial Court on this very issue, prior to his instant Petition to this Court, which *nunc pro tunc* petition was denied by the Trial Court by order dated May 16, 2005—a date that precedes the letter of June 21, 2005, in which DOC notified Barndt of the clarification that resulted from the correspondence between DOC and the Trial Court. While the issue of whether that denial by the Trial Court was correct is not presently before us, we emphasize that due process afforded Barndt an opportunity to further appeal the Trial Court's *nunc*

*pro tunc* denial pursuant to our Rules of Appellate Procedure.

We reject Barndt's argument that due process affords him some opportunity to be heard *during* DOC's administrative attempts to obtain a clarification from a sentencing judge regarding a sentencing order. Where a trial court's sentencing order is illegal on its face, due process opportunity to be heard is afforded to the prisoner seeking credit in the form of a *nunc pro tunc* petition to the sentencing court, and if denied, through further appeal therefrom. *Accord Fajohn.* Where a trial court's sentencing order is legal on its face, due process opportunity to be heard is afforded since a prisoner may petition this Court in our original jurisdiction seeking a writ of mandamus to compel DOC to properly compute a prisoner's prison sentence. *Griffin.* Under this scheme, Barndt cannot be said to have been denied any opportunity to be heard on his request for credit in this matter, notwithstanding DOC's administrative efforts to apply the Trial Court's order in the face of a need for clarification thereof. Thus, Barndt's argument on this issue must fail.

Under our foregoing analysis, the Trial Court's order was indeed a legal order, and Barndt's instant Petition represents the due process afforded to him to have an opportunity to be heard. *Griffin.* Under the language and intent of the Trial Court's order, as well as our precedents as herein applied, Barndt has been awarded the only credit he was due, namely the three days of his incarceration prior to his release on bail. Barndt's Petition on its face, when admitted as true including all reasonable inferences fairly deducible therefrom, will not permit the request sought therein as a matter of law.

Accordingly, we grant the Objections of DOC, sustain the demurrer, and dismiss Barndt's Petition with prejudice.

## *O R D E R*

AND NOW, this 28th day of June, 2006, the Preliminary Objections in the Nature of a Demurrer of the Pennsylvania Department of Corrections are sustained, and the Petition for Review of Michael Aloysius Barndt is dismissed with prejudice.