IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jerome Walker,                            :
                        Petitioner        :
                                          :
            v.                            :   No. 1201 C.D. 2025
                                          :   Submitted:  May 12, 2026
Pennsylvania Parole Board,                :
                        Respondent        :


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED:  June 2, 2026


        Jerome Walker, proceeding pro se, petitions for review of the Order of the
Pennsylvania Parole Board (Board), affirming the Board's Decision that, relevantly,
recommitted Walker as a convicted parole violator (CPV) based on a conviction on
new federal charges and denied him pre-sentence confinement credit toward his
original Pennsylvania state sentence for the time he spent confined on both a Board
Warrant and Detainer (Detainer) and the new federal charges.  The Board held that
its credit determination was consistent with the Supreme Court's longstanding
decision in *Gaito v. Pennsylvania Board of Probation & Parole*, 412 A.2d 568 (Pa.
1980).  On appeal, Walker argues the Board should credit him for his entire pre-
sentence confinement under Section 6138(a)(5.1) of the Prisons and Parole Code

(Code), 61 Pa.C.S. § 6138(a)(5.1),[1] as interpreted by this Court in *Baasit v. Pennsylvania Board of Probation & Parole*, 90 A.3d 74 (Pa. Cmwlth. 2014). Walker acknowledges that the Supreme Court disapproved of *Baasit* in *Smith v. Pennsylvania Board of Probation & Parole*, 171 A.3d 759 (Pa. 2017) (*Smith II*), but contends he should still receive credit for the period during which *Baasit* remained good law, and asserts the Board's failure to give him that credit constitutes an unconstitutional ex post facto application of *Smith II* to his case. Upon review, we affirm.

## I. BACKGROUND

The facts in this matter are not in dispute. On August 28, 2012, the Board granted Walker parole from a four-to-eight-year sentence for a 2008 conviction on drug and gun charges (Original Sentence), and he was released on January 2, 2013. (Certified Record (C.R.) at 1-2, 4, 6.) When he was paroled, Walker's sentence maximum date was December 28, 2016. (*Id.* at 6.) The Board issued a Detainer for Walker on April 24, 2015, after Walker was arrested by the Philadelphia Police Department on new state charges, including drug and gun charges, on April 23, 2015. (*Id.* at 10-11, 85-86.) Walker was detained on those charges, and there is no indication that he posted bail. (*Id.* at 10-11, 85.) Walker was indicted on federal drug charges on October 13, 2015, and the state charges were dropped on October 22, 2015. (*Id.* at 39, 70, 91.) Walker stipulated to pretrial detention on his federal charges, and he was confined on those charges beginning October 21, 2015, per an order of the United States District Court of the Eastern District of Pennsylvania. (*Id.*

---

[1] In 2015, Section 6138(a)(5.1) provided: "If the parolee is sentenced to serve a new term of total confinement by a [f]ederal court or by a court of another jurisdiction because of a verdict or plea under paragraph (1), the parolee shall serve the balance of the original term before serving the new term." *Formerly* 61 Pa.C.S. § 6138(a)(5.1). The current version of this section is nearly identical but uses the term "offender" rather than "parolee." 61 Pa.C.S. § 6138(a)(5.1).

at 66, 70.) On December 28, 2016, Walker's original maximum sentence date, it appears the Board may have lifted its Detainer. (*Id.* at 115.[2])

On September 12, 2018, Walker pled guilty to multiple federal drug charges and a gun charge. (*Id.* at 41.) He was sentenced to a total of 180 months (or 15 years) of incarceration in the Federal Bureau of Prisons (FBP). (*Id.* at 42.) Walker received a credit of 1,238 days on his new federal sentence for his pre-sentence confinement from April 23, 2015, through September 11, 2018. (*Id.* at 61-62.) The Board issued a new Warrant and Detainer on February 26, 2019. (*Id.* at 12.) On January 21, 2025, Walker received an executive grant of clemency for his federal sentence by then-President Joseph R. Biden, Jr. (*Id.* at 83.) FBP released Walker on May 16, 2025, and the Board took custody of him the same day. (*Id.* at 64-65.)

Following his return to a State Correctional Institution (SCI), Walker received a Notice of Charges and Hearing on May 28, 2025, based on his new federal convictions. (*Id.* at 13.) The same day, Walker waived his rights to counsel and to detention, preliminary, panel, and revocation hearings, and he admitted to the new federal convictions. (*Id.* at 14-17.) At the bottom of one of his waiver forms, Walker stated the following:

> [P]lease be advised that I spent 1[,]238 days in county jail while awaiting out come [sic] of new case. (see exhibit 4). Also see (exhibit 4) of 445 days good conduct time that I have earned but was not credited due to ela[ps]e of jail time spent. Please also consider exhibits 5

---

[2] Although the Certified Record does not contain a Board action lifting its detainer following the expiration of Walker's original maximum date, Walker indicates as much in his filings. (C.R. at 115.) Ordinarily, when a parolee's maximum date expires while they have pending criminal charges, the Board's detainer is lifted, but the parolee is declared delinquent for control purposes. *See Miskovitch v. Pa. Bd. of Prob. & Parole*, 77 A.3d 66, 73-74 (Pa. Cmwlth. 2013); *Melendez v. Pa. Bd. of Prob. & Parole*, 944 A.2d 824, 824 (Pa. Cmwlth. 2008). This conclusion is supported by the Board's February 26, 2019 Warrant directing that "Walker be retaken and returned [] to the actual custody within the Pennsylvania enclosure . . . ." (C.R. at 12.)

3

through 12, when making your decision. Thank you for your time and effort.

(*Id.* at 17.) Exhibits 4 through 10 and exhibit 12 are various documents issued by the FBP and/or the United States Department of Justice related to Walker's time serving his federal sentence. (*Id.* at 18-24, 29.) Exhibit 11 is a document appearing to have been written by Walker titled "Accountability," in which Walker accepts responsibility for his parole violation, describes the impact the Board's Detainer had while he was serving his federal sentence, and describes conversations he had with his parole officer at the time he was initially arrested about whether to challenge the Board's Detainer or waive the initial hearing and remain in county jail. (*Id.* at 25-27.) On this last point, Walker indicates the parole officer advised him that if he waived the initial hearing and remained in county jail, he could receive credit on both his Original Sentence and new sentence for his entire pre-sentence confinement pursuant to *Baasit*. (*Id.* at 26.) Walker indicated he was arrested on the new charges while *Baasit* was the controlling law, under *Baasit*'s interpretation of Section 6138(a)(5.1) he was entitled to credit for the entire pre-sentence confinement on his Original Sentence, and by the time the Supreme Court "re-established" the *Gaito* rule on October 18, 2017, in *Smith II*, he had already served "11 months past [his] original max date (12-26-16)," when that credit was properly given. (*Id.* at 26.) He maintained that "[t]he new *Gaito* rule re-established on October 18, 2017[,] did not give [him] fair notice" and if he had been aware, he may have made a different decision regarding the Board's detainer and plea bargains. (*Id.* at 26-27.)

By Notice of Decision recorded June 6, 2025, the Board recommitted Walker as a CPV, denied him credit for his time at liberty on parole, and identified Walker's parole violation maximum date as November 12, 2028. (*Id.* at 97-98.) The Board set forth its calculations for Walker's new parole violation maximum date as follows:

4

Walker had 1,456 days remaining on his sentence when he was paroled, the Board granted Walker 180 days credit toward the Original Sentence for his pre-sentence confinement from April 24, 2015, to October 21, 2015, the date before the new state charges were dropped, subtracting 180 days from 1,456 left him with 1,276 days of backtime, and adding 1,276 days to May 16, 2025, the date Walker was paroled on the federal charges, resulted in a parole violation maximum date of November 12, 2028. (*Id.* at 93.)

Walker, through appointed counsel, filed an Administrative Remedies Form identifying multiple errors Walker contended the Board committed in its June 6, 2025 Decision. (*Id.* at 99.) Relevant to Walker's current argument, he asserted the Board violated Section 6138(a)(5.1) related to the order of Walker's service of his Original Sentence and the new federal sentence, the Board failed to give Walker credit for all the time he was serving on the Board's warrant or while incarcerated, and the Board's failure to give Walker credit for his entire pre-sentence confinement period on the Original Sentence was an ex post facto violation of the law where it had previously given credit to others. (*Id.* at 99.) Walker, personally, filed additional documents with the Board in which he stated

> [t]he Board [f]ailed to apply the "*Baasit-Smith-Banks*"[3] line of cases policy [sic] to the allocation of [his] pre[-]sentence credit jail time. [It f]ailed to consider the prohibition of the "ex post facto clause violation["] in this case. See and review all attachments in this matter for [f]ull detail arguments.

---

[3] Walker is referring to *Baasit*, *Smith v. Pennsylvania Board of Probation and Parole*, 133 A.3d 820 (Pa. Cmwlth. 2016) (*Smith I*), which was reversed by *Smith II*, and *Banks v. Pennsylvania Board of Probation and Parole*, 136 A.3d 1102 (Pa. Cmwlth. 2016), *vacated and remanded*, 176 A.3d 228 (Pa. 2017) (vacating this Court's order granting relief under *Baasit* based on *Smith II*).

(*Id.* at 100-53.) In those documents, Walker reiterated that his parole agent had advised him at the time he was initially arrested that he would receive credit for all his pre-sentence confinement time based on *Baasit*, and that the failure to apply the *Baasit-Smith-Banks* policy in his case violated ex post facto principles. (*Id.* at 129-35, 151-52, 160-62.) He further indicated that another parole agent repeated that position in his May 28, 2025, interview upon his return to an SCI, which led him to waive his revocation hearing. (*Id.* at 115-16, 148-49.) Walker maintains his position is supported by *Spruell v. Barkley*, No. 2:17-cv-0809, 2019 WL 1208362, (W.D. Pa. March 14, 2019), which, he asserts, reflects the Board's change in policy after *Baasit* to grant pre-sentence confinement credit in accordance with that case. (*Id.* at 134.) Walker maintained that the *Baasit-Smith-Banks* cases should apply because they were the case law when he was on parole, at the time he was arrested, and during most of his pre-sentence confinement, and *Gaito* was not "re-established" as controlling until later. (*Id.*) Applying the "re-established" *Gaito*, Walker asserted, results in an increase of his punishment without his having notice and, therefore, violated ex post facto principles. (*Id.* at 134-35.)

The Board issued its Order affirming the Decision on August 26, 2025, responding to Walker's pre-sentence confinement credit and order of sentence arguments as follows.

> Walker is entitled to backtime credit from April 24, 2015[,] to October 21, 2015[,] (180 days). He was not given credit after his October 21, 2015 federal arrest because he did not post bail and he was not held solely on the Board's detainer. *Gaito* . . . . This means that he owed 1,456 - 180 = 1,276 days on his original sentence.
>
> Because [] Walker was sentenced to federal incarceration, the . . . Code provides that he serve the balance of the original sentence before serving the new sentence. 61 Pa. C.S. § 6138(a)(5.1). However, that provision is contingent on federal authorities releasing him to return to

6

the SCI. The Board has no mechanism to remove a federal inmate from serving a sentence in federal custody, nor can it compel federal authorities to comply with the statute. Thus, he became available to commence service of his [O]riginal [S]entence on May 16, 2025[,] when he completed his federal sentence. Adding 1,276 days to that date yields a recalculated maximum date of November 12, 2028.

(*Id.* at 166.) Walker now petitions this Court for review.[4]

## II. DISCUSSION
### A. Parties' Arguments

On appeal, Walker reiterates his arguments based on the *Baasit-Smith-Banks* cases, and his contention that the failure to give him credit against his Original Sentence for all his pre-sentence confinement time violates the Ex Post Facto Clause of the United States Constitution, U.S. Const. art. I, §10, because he committed his new offenses when *Baasit* was controlling and applying *Smith II* results in a detriment to him (more time incarcerated). (Petitioner's Brief (Br.) at 13-14.) He continues to assert that *Spruell* supports his position, and the Board should recalculate his parole violation maximum date using the correct amount of credit. (*Id.* at 18-20.) In his subsequent Motion to Expedite, which the Court granted by order dated March 11, 2026, Walker requested expedited review of his appeal because if he prevails, his new maximum date would be in November 2025 based on his calculations.[5]

---

[4] In reviewing the Board's Order, we are to determine "whether the decision was supported by substantial evidence, whether an error of law occurred[,] or whether constitutional rights were violated." *Brown v. Pa. Bd. of Prob. & Parole*, 184 A.3d 1021, 1023 n.5 (Pa. Cmwlth. 2017) (quoting *Ramos v. Pa. Bd. of Prob. & Parole*, 954 A.2d 107, 109 n.1 (Pa. Cmwlth. 2008)).

[5] Based on the record, it appears that if Walker's position is accepted, his parole violation maximum date would be December 20, 2025. This is based on his having 1,456 days remaining on his original sentence when paroled, and his seeking 1,238 days credit for his pre-sentence confinement. Subtracting 1,238 from 1,456 equals 218 days, and adding 218 days to May 16, 2025, results in a new maximum date of December 20, 2025.

The Board argues it properly calculated Walker's parole violation maximum date, and its pre-sentence confinement credit determination awarding Walker 180 days of credit is in accordance with *Gaito* because that is the only time he was confined solely on the Board's Detainer. (Respondent's Br. at 5-6.) According to the Board, Walker has not asserted a colorable ex post facto claim because the *Gaito* rule, which was properly applied here, has been the law since 1980. (*Id.* at 5.) The Board maintains that the requirement for Walker to serve the remainder of his sentence due to his status as a CPV is operative only after his parole was revoked and the Original Sentence became due and owing. (*Id.* at 6 (citing, *e.g.*, *Campbell v. Pa. Bd. of Prob. & Parole*, 409 A.2d 980 (Pa. Cmwlth. 1980)).) Finally, the Board argues Walker's reliance on certain equitable principles, such as those set forth in *Martin v. Pennsylvania Board of Probation and Parole*, 840 A.2d 299 (Pa. 2003), and *Baasit*, is misplaced because *Smith II* specifically rejected *Baasit* as having replaced *Gaito* and stated that *Martin*'s limited exception to *Gaito* only applied when a parolee's maximum sentence on the new charges exceeded the period of pre-sentence confinement. (*Id.*)

*B. Analysis*

Article I, Section 10, clause 1 of the United States Constitution states that "no State shall . . . pass any . . . ex post facto Law." U.S. CONST. art. I, § 10, cl. 1. The Ex Post Facto Clause applies to a law or policy which "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Ca. Dep't of Corr. v. Morales*, 514 U.S. 499, 506 n.3 (1995). Our own Supreme Court has recognized that a retroactive change in parole laws may violate the Ex Post Facto Clause if the amendment creates a significant risk of prolonging an inmate's incarceration. *Cimaszewski v. Pa. Bd. of Prob. & Parole*, 868 A.2d 416, 426-27 (Pa.

8

2005). "Two critical elements must be present for a criminal or penal law to be violative of the [E]x [P]ost [F]acto [C]lause: 'It must be retrospective, that is, **it must apply to events occurring before its enactment**, and it must disadvantage the offender affected by it.'" *Id.* at 423 (emphasis added) (quoting *Weaver v. Graham*, 450 U.S. 24, 29 (1981)).

The Ex Post Facto Clause does not, on its own, apply to the judicial branch; however, there are "limitations on ex post facto judicial decision-making [] inherent in the notion of due process" relating to individuals having fair warning of the law. *Rogers v. Tennessee*, 532 U.S. 451, 456-57 (2001). The "[d]eprivation of the right to fair warning," thereby implicating due process, "can result . . . from an **unforeseeable** and retroactive **judicial**" **enlargement** or **change** of statutory interpretation or **prior case law**. *Id.* at 457-58 (emphasis added). "[A] judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, only where it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Id.* at 462 (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964)).

The alleged change in law Walker relies upon relates to the allocation of credit for pre-sentence confinement where a parolee is detained on both new charges and a Board warrant and detainer. The seminal case on the allocation of credit for time spent in pre-sentence confinement is *Gaito*. In *Gaito*, the Supreme Court held that if a parolee is detained on both a Board detainer and new charges, the time spent in custody is to be credited to the sentence imposed for the new charges. 412 A.2d at 571. However, if a parolee meets the bail requirements for the new charges and is, therefore, detained solely on the Board's detainer, the time spent in custody is to be credited to the original sentence. *Id.* *Gaito* recognized that, where there is no

9

conviction or no new sentence imposed for a conviction on the new charge, the pre-sentence confinement "must be applied to the parolee's original sentence." *Id.* at 571 n.6.

In *Martin*, the Supreme Court acknowledged there may be other circumstances where applying this general rule results in a parolee not receiving credit for the full amount of time spent in pre-sentence confinement, such as where the pre-sentence confinement exceeds the maximum sentence of imprisonment on the new charges. 840 A.2d at 309. In those cases, "all time spent in confinement must be credited to either the new sentence or the original sentence[,]" *id.*, and credit toward the original sentence may occur where it was not possible to award all credit toward the new sentence because the new sentence was shorter than the period of pre-sentence confinement, *see Smith II*, 171 A.3d at 768-69.

In *Baasit*, this Court sought to further expand *Martin*'s equitable principles to allow even more flexibility in granting credit against an original sentence for pre-sentence confinement. In that case, Baasit was paroled on his state sentence, while on parole was arrested on new state charges on November 26, 2007, but did not post bail, and the Board issued a detainer on the same day. *Baasit*, 90 A.3d at 75. Baasit subsequently was indicted on federal charges, his new state charges were dismissed in August 2008, and he was ordered committed to federal custody on August 29, 2008. *Id.* Baasit pled guilty to federal charges in August 2010, the Board held a revocation hearing in November 2010, and the Board recommitted him as a CPV in January 2011 to serve 30 months of backtime when Baasit was available, pending his sentencing on the federal convictions. *Id.* Sentencing on the federal charges occurred on August 27, 2012, and Baasit was sentenced to 48 months in federal custody on each of 2 counts, which was "to be served concurrently to each other and

10

consecutive to any sentence the defendant is now serving or for which he is being held." *Id.* at 75-76 (emphasis omitted). Baasit returned to an SCI the next day, and, in September 2012, the Board issued a decision recommitting him to serve 30 months of backtime and recalculated his maximum date based on his receiving credit for 277 days of pre-sentence confinement from November 26, 2007, through August 29, 2008, or the period between his arrest and the issuance of the federal detainer. *Id.* at 76. Baasit appealed the recalculation of his maximum date, arguing he was due more credit against his original sentence for his pre-sentence confinement. *Id.* The Board denied the appeal citing *Gaito*, and Baasit petitioned this Court for review. *Id.*

In reversing the Board's decision, this Court identified numerous issues with the Board's pre-sentence confinement credit calculation as supporting reversal. This Court first cited the federal court's sentencing order, which directed that the new sentence be served **consecutive** to Baasit's existing state sentence and effected whether Baasit could receive credit on his federal sentence for the pre-sentence confinement. *Id.* at 80. The Court next noted that there was no concern of Baasit receiving double credit for the pre-sentence confinement if he received credit on his state sentence because federal law prohibited the federal authorities from granting credit for time credited elsewhere. *Id.* at 80-81. The Court also looked to *Martin*, acknowledging that the case was factually distinguishable, but finding it "noteworthy in that it represents some flexibility in credit assignments from the approach under the 1980 decision in *Gaito*." *Id.* at 82. The Court finally cited Section 6138(a)(5.1) as directing the order of service of Baasit's sentences, which supported his receiving credit for the entire pre-sentence confinement period on his state sentence, which was to be served first. *Id.* at 82-83.

11

However, the Supreme Court rejected *Baasit*'s more expansive reading of *Martin* and reliance on Section 6138(a)(5.1) in *Smith II*. In *Smith II*, the Supreme Court explained the standard for allocating credit for pre-sentencing confinement as follows:

> *Gaito* **remains the general law** in this Commonwealth **respecting how credit should be allocated for a [CPV] who receives a new sentence of incarceration**, and the exception to *Gaito* set forth at footnote 6 and further developed in *Martin*, is limited to cases in which a [CPV] receives a term of incarceration for new charges that is shorter than his pre-sentence confinement, such that the application of the general *Gaito* rule would result in excess incarceration.

*Smith II*, 171 A.3d at 768-69 (emphasis added).

Walker's arguments are predicated on his contention that this Court's holding in *Baasit* **replaced** the Supreme Court's holding in *Gaito* as to the way pre-sentence confinement credit is to be calculated and that *Gaito* was not again good law until the Supreme Court "re-established" it as such in *Smith II*. In Walker's view, the Board had to apply *Baasit*, not *Gaito*, in calculating his pre-sentence confinement credit in 2025 because when he committed his new federal crimes in 2015, *Baasit* had not yet been disapproved and was "controlling." According to Walker, the Board's failure to apply *Baasit*, and applying *Gaito*'s general rule instead, resulted in a violation of the Ex Post Facto Clause of the United States Constitution.

However, Walker misreads *Smith II* as "re-establishing" *Gaito* as the controlling law on pre-sentence confinement. What the Supreme Court stated in *Smith II* was that *Gaito* **was and remained** the law in determining "how credit should be allocated for a [CPV] who receives a new sentence of incarceration . . . ." *Smith II*, 171 A.3d at 768. It observed that "neither *Martin* nor any other decision by this Court, contrary to [the Commonwealth Court] panel's claim, imparted any

12

indication *Gaito*'s general rule was to be relaxed or overruled." *Id.* Plainly, this Court in *Baasit* could not overrule the Supreme Court's decision in *Gaito*. And, absent the circumstances recognized by the Supreme Court in *Martin*, and confirmed in *Smith II*, which are **not** present here, *Gaito* controls, notwithstanding *Baasit*. Because the *Gaito* rule long **preceded** Walker's commission of federal crimes in 2015 and **remained** the controlling law on the calculation of pre-sentence confinement, *Smith II*, 171 A.3d at 768, Walker **cannot** establish that a **change in law** was **retroactively** applied to him that would support an ex post facto claim based on the Board applying *Gaito*, rather than *Baasit*, in calculating Walker's pre-sentence confinement credit.

As for the other reasons *Baasit* cited as bases to award credit in that case, they are either inapplicable here or the Supreme Court rejected them as being inconsistent with precedent. First, unlike the sentencing order in *Baasit* that directed that the federal sentence be served consecutive to any other sentence "the defendant [was] now serving," *Baasit*, 90 A.3d at 75-76 (emphasis omitted), the federal sentencing order here makes no reference to Walker's Original Sentence, (C.R. at 41-42). Thus, the Board's Order does not contravene the relevant federal sentence order. Second, as explained in *Smith II*, reliance on Section 6138(a)(5.1) is misplaced because the provisions of Section 6138(a) relating to order of sentences have **never** been "applied in *Gaito* or any of its progeny as [being] pertinent to the question of how credit should be applied." *Smith II*, 171 A.3d at 769. Moreover, as early as **2013**, this Court recognized that, notwithstanding Section 6138(a)(5.1), the Board lacked the authority to retrieve a parolee from federal custody in order for the parolee to complete the original sentence first. *Sanders v. Pa. Bd. of Prob. & Parole* (Pa.

13

Cmwlth., No. 2152 C.D. 2012, filed June 17, 2013), slip op. at 8.[6]  Walker's argument would have required the Board to retrieve him from federal custody, which, even at the time of his commission of the federal crimes in 2015, the Board had no authority to do.

Baasit is also distinguishable because Walker received credit against his federal sentence for the **same** 1,238 days he asserts he is due under *Baasit*, and in *Baasit* there was no possibility of receiving double credit.  90 A.3d at 83.  It is well-settled law that nothing in the Code authorizes "a defendant to receive credit against more than one sentence imposed for multiple convictions of separate and unrelated charges."  *Bright v. Pa. Bd. of Prob. & Parole*, 831 A.2d 775, 778 (Pa. Cmwlth. 2003).  *See, e.g.*, *Martin*, 840 A.2d at 309 (stating that pre-sentence confinement credit must be applied to **either** the new sentence or the original sentence); *Barndt v. Dep't of Corr.*, 902 A.2d 589, 595 (Pa. Cmwlth. 2006) (holding that the Code "does not contemplate credit for time served to be awarded twice"); *Taglienti v. Dep't of Corr.*, 806 A.2d 988 (Pa. Cmwlth. 2002) (same).  The relief Walker seeks, double credit, is contrary to settled law that existed prior to his commission of the federal crimes in 2015 and further distinguishes this matter from *Baasit*.

Notably, Walker seeks relief that not even the defendants in *Smith II* and *Banks* ultimately received.  In both of those cases, this Court granted the defendants credit for their pre-sentence confinement on their original state sentences based on *Baasit*.  The Supreme Court, respectively, reversed in *Smith II* and vacated and remanded in *Banks* based on *Smith II*, with those defendants receiving **no** credit toward their original sentences for **any** of the pre-sentence confinement time served

---

[6] Unreported panel decisions of this Court may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

14

while *Baasit* remained "good law." We discern no reason why Walker would be entitled to relief not granted in *Smith II* and *Banks*.

Finally, Walker's reliance on *Spruell* is misplaced. In that case, Spruell, a former prisoner, initiated an action pursuant to 42 U.S.C. § 1983, alleging that the Board's then-Secretary violated his due process rights and wrongfully incarcerated him beyond his maximum parole release date after the Board changed its policy as to calculating pre-sentence confinement credit for periods served on both a Board and federal detainer under *Baasit*. 2019 WL 1208362, at *1-2. The *Spruell* Court noted that, based on *Baasit*, the Board enacted a policy regarding its pre-sentence confinement credit process on April 23, 2016, and based on its recalculations, advised Spruell's parole supervisor on June 17, 2016, that Spruell's maximum date changed from March 9, 2019, to April 3, 2014. *Id.* at *2. Spruell was released on June 23, 2016, six days after the change of his maximum date but two months after the Board changed its policy. *Id.* *Spruell* set forth the history of the calculation of pre-sentence confinement law, including *Gaito*, *Martin*, *Baasit*, *Smith II*, and *Banks*, describing cases like *Baasit* as "changing" the law, and the Board's reaction to *Baasit*/*Smith*/*Banks* that resulted in the recalculation of Spruell's maximum date, although it noted the Board's initial calculation denying credit for his pre-sentence confinement was correct under *Gaito* and *Smith II*. *Id.* at *4-5. Ultimately, however, the *Spruell* Court dismissed Spruell's complaint based on the lack of personal involvement of the Board's Secretary and because there was no evidence of deliberate indifference and he received the process that he was due. *Id.* at *7-10.

Walker does not rely on *Spruell* for its legal holdings. Instead, he cites that case's characterization of Pennsylvania cases on pre-sentence confinement credit as "changing" the law over time, that *Baasit* "controll[ed]" for a period, and that

*Smith II* "re-established" the Board's lack of flexibility to determine to which sentence credit should be applied, *id.* at \*5, as well as its description of the Board's post-*Baasit* policy. However, "the pronouncements of the lower federal courts have **only persuasive**, **not binding**, effect on the courts of this Commonwealth." *Cole v. Dep't of Env't Prot.*, 257 A.3d 805, 813 (Pa. Cmwlth. 2021) (emphasis added) (quoting *In re Stevenson*, 40 A.3d 1212, 1221 (Pa. 2012)). We are not persuaded by *Spruell*'s characterization of Pennsylvania's law on pre-sentence confinement credit as having been changed from *Gaito*'s principles, which, the federal court suggested, were not "re-established" until *Smith II*. *Spruell*, 2019 WL 1208362, at \*5. Our Supreme Court expressly stated in *Smith II* that *Gaito* "**remains**" the controlling law on the topic, *Smith II*, 171 A.3d at 768-69 (emphasis added), and the high court rejected the award of **any** credit for pre-sentence confinement for time spent on both a Board warrant and federal charges in *Smith II* and in *Banks*, even though that confinement occurred while *Baasit* remained "valid." Neither this Court in *Baasit*, nor the Board in its policy making, could alter the controlling nature of the Supreme Court's longstanding decision in *Gaito* so as to require us, now, to conclude that the Board committed an error of law, abused its discretion, or violated Walker's constitutional rights when it denied him credit for pre-sentence confinement time that was not served solely on the Board's Detainer and/or for which he had already received credit on his federal sentence.

## III.  CONCLUSION

For the foregoing reasons, having discerned no errors of law, abuses of discretion, or constitutional violations in the Board's Order, we affirm.

_____
RENÉE COHN JUBELIRER, President Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jerome Walker,                       :
             Petitioner        :
                            :
        v.                    :    No. 1201 C.D. 2025
                            :
Pennsylvania Parole Board,      :
             Respondent    :

# **O R D E R**

**NOW**, June 2, 2026, the Order of the Pennsylvania Parole Board, entered in the above-captioned matter, is hereby **AFFIRMED**.

_____
RENÉE COHN JUBELIRER, President Judge